**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
ADRIA ENGLISH,                                    :
                                                  :
                              Plaintiff,          :     Civil Case No.:
                    v.                            :
                                                  :
                                                  :     **COMPLAINT**
SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF, PUFF     :
DADDY, PUFFY, BROTHER LOVE",                      :
BAD BOY ENTERTAINMENT HOLDINGS, INC.,             :
SEAN JOHN CLOTHING LLC, INC.,                     :
COMBS GLOBAL ENTERPRISES,                         :
TAMIKO THOMAS,                                    :
JACOB ARABOV a/k/a "JACOB THE JEWELER,"           :     **JURY  DEMAND**
VIBE MAGAZINE a/k/a "VIBE,"                       :
PENSKE MEDIA CORPORATION a/k/a and d/b/a          :
"PMC,"                                            :
JOHN and JANE DOES 1-10, and                             :
ORGANIZATIONAL DOES 1-10                          :
                              Defendants          :
------------------------------------------------------------------------X

> ## TRIGGER WARNING:
> ## THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION OF A
> ## SEXUAL NATURE, INCLUDING SEXUAL ASSAULT

Plaintiff, ADRIA ENGLISH ("PLAINTIFF" or "PLAINTIFF ENGLISH" or "MS.

ENGLISH"), by and through her attorneys, hereby alleges and avers of the Defendants SEAN

COMBS a/k/a "P. DIDDY, DIDDY, PUFF, PUFF DADDY, PUFFY, BROTHER LOVE," BAD

BOY ENTERTAINMENT HOLDINGS, INC. ("BBE"), SEAN JOHN CLOTHING LLC.

("SJC"), COMBS GLOBAL ENTERPRISES ("CGE"), TAMIKO THOMAS, JACOB

ARABOV a/k/a "JACOB THE JEWELER" ("JACOB") VIBE MAGAZINE a/k/a "VIBE,"

PENSKE MEDIA CORPORATION a/k/a and d/b/a "PMC," JOHN and JANE DOES 1-10, and

ORGANIZATIONAL DOES 1-10, (collectively referred to as "Defendants"), alleges upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1. On November 16, 2023, Casandra Ventura a/k/a "Cassie" filed a 35-page lawsuit in which she exposed Defendant Combs of subjecting her to nearly a decade of physical, sexual and emotional abuse punctuated by rape, sex trafficking and being forced to engage in drug-fueled nonconsensual sexual encounters with other men.

2. Ordinarily, when a lawsuit such as Ms. Ventura's is filed that involves events that took place long ago, witnesses are few and far between and evidence hard to muster. Not so for the claims brought against Defendant Combs. Within minutes of the filing, Ms. Ventura's claims were confirmed by various witnesses, including a rival musician whose car Defendant Combs blew up, various individuals who observed Defendant Combs beat Ms. Ventura and a video released by CNN, just a few weeks ago, showing Defendant Combs physically abusing, battering and assaulting Ms. Ventura.

3. Since Ms. Ventura's brave decision to file a lawsuit against Defendant Combs, Defendant Combs has accumulated numerous lawsuits across the country for the same conduct alleged by Ms. Ventura.

4. Days later, more lawsuits were filed against Defendant Combs. One being, Plaintiff Joi Dickerson-Neal,[1] alleged that Defendant Combs drugged and sexually assaulted her when she was a college student. The other lawsuit, currently being appropriately refiled in New Jersey, accused Ms. Combs and singer Aaron Hall of forcing the Plaintiff and another unidentified woman into nonconsensual sex.

---

[1] Supreme Court of the State of New York, New York County Index No. 952341/2023

5. At the same time, a fourth lawsuit was filed; this one against Defendant Combs' companies and Defendant Harve Pierre, the longtime President of Bad Boy Entertainment Holdings, Inc. The suit alleged that Mr. Pierre used his position of power at Bad Boy to groom and sexually assault his former assistant, and that Bad Boy looked the other way at the time.[2]

6. The fifth lawsuit filed against Defendant Combs include allegations brought by a Doe Plaintiff are just as egregious than those brought by his prior victims including that Plaintiff Doe was sex trafficked and gang raped by Defendant Combs and various other individuals.[3]

7. A sixth lawsuit was filed against Defendant Combs and various other Defendants by Plaintiff Rodney Jones, including allegations of sexual assault, sex work, sex and drug trafficking, and an ongoing criminal Enterprise and corrupt organization,[4] similar to the claims Plaintiff files in this instant action.

8. A seventh lawsuit was filed against Defendant Combs and Defendant's son Christian Combs by Plaintiff Grace O'Marcaigh.[5] Plaintiff in that suit alleges she was sexually assaulted and physically harmed by the actions of Defendant's son and that Defendant Combs aided and abetted in his son's tortious conduct.

9. An eighth lawsuit was filed against Defendant Combs by model Plaintiff Crystal McKinney alleging that she was "drugged and sexually assaulted" by Defendant Combs.[6]

---

[2] Supreme Court of the State of New York, New York County Index No. 952246/2023
[3] United States District Court Southern District of New York Case No. 1:23-cv-10628
[4] United States District Court Southern District of New York Case No. 1:24-cv-1457
[5] Superior Court of the State of California, County of Los Angeles Case No.: 24STCV08571
[6] United States District Court Southern District of New York Case No. 1:24-cv-03931

The allegations in Plaintiff McKinney's complaint echo similar claims filed by the Plaintiff in the instant action.

10. A ninth lawsuit was filed against Defendant Combs by Plaintiff April Lampros.[7] In that suit, Plaintiff Lampros alleges the Defendant of battery, assault, negligent infliction of emotional distress and violation of the victims of gender-motivated violence protection of the law, again eerily similar to the claims made by Plaintiff herein.

11. Prior to any of the cases above being filed, Defendant Combs was named as a Defendant in a civil sexual assault lawsuit in Florida involving R&B Singer Tremaine Neverson a/k/a Trey Songz.[8]



12. Defendant Combs was also implicated in a lawsuit filed in California against R&B Singer Chris Brown for a sexual assault that took place on a yacht anchored at Defendant Combs' Star Island estate in Miami, FL.[9]

---

[7] New York County Supreme Court Index No. 154859/2024
[8] 11th Judicial Circuit Court, Miami, Florida Case No.: 21-26889-CA-01
[9] Superior Court of the State of California, County of Los Angeles Case No.: 22VECV00140

13. Chris Brown was also referenced in the lawsuit between Plaintiff Rodney Jones and Defendant Combs, implicating Mr. Brown was "in Mr. Combs Los Angeles home consorting with underaged girls and sex workers."[10]



14. This is now the tenth lawsuit filed against Defendant Combs since November 16, 2023. Just as the allegations brought by the other nine Plaintiffs, Plaintiff English's claims are just as egregious.

15. Due to these numerous lawsuits filed against Defendant Combs alleging the same or similar acts, there is now a growing awareness that Defendant Combs was engaging in far more sinister acts than previously known including physical abuse and sex trafficking.

16. Specifically, from 2004-2009, Plaintiff was sex trafficked by Defendants Combs, Thomas, and Arabov.

17. Additionally, because of Defendant Combs relationship with Defendant VIBE, due to their conspiracy in the sex trafficking Enterprise, Defendants knew they could publish Plaintiff's likeness, without her consent, and fear of recourse and chose Plaintiff's likeness to use, without permission, in an effort to continue the Defendants sex

---

[10] United States District Court Southern District of New York Case No. 1:24-cv-1457, E.C.F 38 ¶ 29(j)

trafficking Enterprise for their financial benefit. Therefore, Plaintiff brings claims
pursuant to New York Civil Rights Law §§ 50 and 51 and 15 U.S.C. § 1125(a).

18. Plaintiff can support her allegations within this complaint and has lived her adult life with
the memories of being trapped in a cycle of sex trafficking she never asked to be a part of
and was chosen because Defendant Combs knew he could groom her. For years, Plaintiff
has been affected by Defendants actions and has suffered extreme emotional distress
impacting nearly every aspect of Plaintiff's life and personal relationships. Given all the
brave individuals who have come forward against Defendant Combs, Plaintiff is doing
the same.

19. Plaintiff brings this action seeking injunctive, declaratory and monetary relief against
Defendants in violation of the Victims of Gender-Motivated Violence Protection Law,
Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq.*
("VGMVPL"), .

## JURISDICTION AND VENUE

20. This Court has personal jurisdiction over the Defendants under and consistent with the
Constitutional requirements of Due Process in that the Defendants, acting directly or
through his agents or apparent agents, committed one or more of the following:

    a.  The transaction of any business within the state;

    b.  The making of any contract within the state;

    c.  The commission of a tortious act within this District; and

    d.  The ownership, use, or possession of any real estate in this state.

21. As of the date of this filing, Defendants Combs, Jacob, BBE, SJC, VIBE, PMC and
Organizational Does have consistently and purposefully availed themselves of the

privilege of conducting activities within New York, thus invoking the benefits and protections of New York law. In return for these benefits and protections, Defendants must submit to the burdens of litigation in New York.

22. This litigation arises from or relates to the tortious activities the Defendants Combs, Jacob and Thomas, BBE, SJC, VIBE, PMC and Organizational Does visited upon Plaintiff Jones in New York and Florida. This tortious conduct violated United States Federal Rico Laws and the United States Victims ("USVI") of the Trafficking and Violence Protection Act of 2000 ("TVPA").

23. Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice. Plaintiffs' claims arise from some conduct occurring by Defendants in New York, specifically, the trafficking of Plaintiff across State lines between New York and Florida.

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 for original jurisdiction over civil actions where the matter in controversy exceeds to the sum and value of $75,000 and is between citizens of different states. This Court has subject matter jurisdiction over this matter under 15 U.S. Code § 1121 because one claim at issue arises under the Lanham Act. This Court also has subject matter jurisdiction under 28 U.S. Code § 1332 and supplemental jurisdiction under 28 U.S. Code § 1367 because the state law claim forms part of the same case and controversy as the claim arising under the federal statute.

25. Pursuant to 28 U.S.C. § 1391(b), (c) and 1400(a), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action, alleged herein, occurred in this district.

26. Plaintiff brings suit against Defendants pursuant to the NYC Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 8-901 *et. seq*, to redress the substantial and lifetime injuries she has suffered as a result of being drugged, sex trafficked and assaulted by Defendants Combs, Thomas and Jacob.

27. This action arises under N.Y. Civ. Rights Law §§ 50 and 51 and 15 U.S.C. § 1125(a).

28. This Court has personal jurisdiction over Defendants and each of them because Defendants have purposefully directed their unlawful conduct to this judicial district and have conducted substantial business in this judicial district.

## **PROCEDURAL REQUIREMENTS**

### **THE N.Y.C. VICTIMS OF GENDER MOTIVATED VIOLENCE PROTECTION ACT**

29. The N.Y.C. Victims of Gender Motivated Violence Protection Act ("NYC Gender Motivated Violence Act") created a lookback window on March 01, 2023, which runs for two years, for survivors of gender motivated violence, allowing them to sue their abusers regardless of when the abuse occurred. N.Y.C. Admin. Code § 10-1105(a).

30. The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

31. The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

32. The above-described conduct of Defendant Combs, Thomas and Jacob including, but not limited to, Defendant Jacob's sexual assault of Plaintiff constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as well as Defendant Combs' direction, enabling, participation and conspiring in the commission of a crime of violence motivated by gender as defined by the NYC Gender Motivated Violence Act.

33. Given the extensive media coverage and numerous lawsuits filed in the District of New York, both federal and State against Defendant Combs, Defendants BBE, Combs Enterprises, Jacob, VIBE, PMC and Does and Doe Organizations were put on notice of the sexual abuse and trafficking allegations made against Defendant Combs.

**PARTIES**

**DEFENDANT SEAN COMBS**



34. Defendant Combs retains residences in both Florida and California and upon information and belief is a citizen of the State of California.

35. At all relevant times, Defendant Combs was a citizen and resident of the State of New York.

36. Defendant Sean Combs is a rapper and record executive popularly known by his stage names Puff Daddy, Puffy, Puff, P. Diddy, Diddy, Brother Love or Love. Defendant Combs rose to prominence in the music and entertainment industry over the decades and

is regularly referred to as a hip-hop mogul. Defendant Combs was first accused of acts described in this complaint by his long-time paramour and former BBE artist, Cassie Ventura as pictured above, on November 16, 2023.

37. Defendant Combs is a Grammy-awarded musician, rapper and producer.

38. Defendant P. Diddy founded co-Defendants BBE, SJC and CGE.

39. Defendant Diddy has signed, through BBE, some of the biggest stars in music including Rick Ross, Machine Gun Kelly, Notorious B.I.G., New Edition, Mase, Pitbull, Lil John, Fabolous, French Montana and groups like Danity Kane, 112, and Total, to name just a few.[11]

40. In 2008, Defendant P. Diddy was the first male rapper to get a star on the Hollywood Walk of Fame.

41. Defendant Diddy "founded Bad Boy Records in 1992, and the company has sold over 500 million records, produced 38 platinum albums, and won multiple Grammy Awards" according to the official website of Combs Global.[12]

42. In 2022, Forbes estimated that Defendant Diddy was one of the wealthiest hip-hop artists in America and that his net worth is over $1 billion.

43. Upon information and belief, Defendant Diddy has a long history of committing physical and sexual violence against women and men, both of age and underaged, as documented and publicly available in over nine lawsuits across the country as well as extensive media coverage on the lawsuits and the allegations made therein.

---

[11] https://www.ranker.com/list/bands-and-musicians-on-bad-boy-records/music-lover
https://combsglobal.com/bad-boy-entertainment/
[12] https://combsglobal.com/bad-boy-entertainment/

**DEFENDANT BAD BOY ENTERTAINMENT HOLDINGS, INC.**



44. Bad Boy Entertainment Holdings, Inc., is a domestic business corporation licensed to do business in New York and headquartered at 1440 Broadway, Third Floor, New York, NY 10018.

45. Bad Boy Entertainment Holdings, Inc. is a domestic business corporation licensed to do business in New York since 1992.

46. Defendant Bad Boy Entertainment Holdings, Inc. ("BBE") is a music, media, and entertainment company founded and owned by Defendant Sean Combs. Bad Boy is incorporated and headquartered in New York, New York.

47. Defendant BBE has been named in several lawsuits where Defendant Combs has been accused of claims of sexual abuse and sex trafficking as every business Defendant Combs engages with play a role in his illegal Enterprise.

**SEAN JOHN CLOTHING LLC**

*Sean John*

48. In 1998, Combs founded Sean John, which has retail sales of over $450 million.

49. As CEO and president of the company, Defendant Combs was representing Sean John when he conspired and sex trafficked Plaintiff.

50. Sean John Clothing LLC is a domestic liability company licensed to business in New York.

## DEFENDANT COMBS ENTRERPRISE LLC



51. Defendant Combs Enterprise has its principal place of business located in New York, NY.

52. Upon information and belief, Combs Enterprise, LLC., d/b/a Combs Global.

53. Upon information and belief, Combs Enterprise LLC is a domestic liability company license to do business in New York.

54. Combs Enterprise, LLC. Is a business conglomerate founded by Defendant Combs which is prevalent in the music, entertainment, fashion, spirits, and television industries, while including a diverse portfolio of business and investments including fragrance, marketing, media properties and liquor.

## DEFENDANT TAMIKO THOMAS



55. Defendant Thomas, upon information and belief, is a citizen of the State of New York.

56. Defendant Thomas, upon information and belief, was an employee of Defendant BBE at all relevant times.

57. Defendant Thomas, in her employment capacity, was responsible for transporting and making payment to individuals like Plaintiff, in furtherance of a corrupt organization of sex trafficking on behalf of Defendant Combs and the beneficiaries of the corrupt organization including Defendants Jacob, VIBE and PMC.

**DEFENDANT JACOB ARABOV "JACOB THE JEWELER"**



58.  Upon information and belief, Defendant Jacob, at all relevant times, was a resident of the State of New York.

59. Upon information and belief, Defendant Jacob, at all relevant times, was a citizen of the State of New York despite being born in Uzbekistan.

60. Defendant Jacob was a beneficiary of the corrupt organization ran by Defendants Combs, BBE, Thomas, VIBE and PMC, and is pictured with the Plaintiff above, when he knowingly had intercourse with Plaintiff, who was trafficked for that specific purpose.

61. Defendant Jacob, in 2008, was sentenced to two and a half years in federal prison regarding a multistate drug ring, was fined $50,000 and had to forfeit $2,000,000.00 to the U.S. Government.

62. Prior to being imprisoned, Defendant Jacob frequented parties thrown by Defendant Combs and BBE where he knowingly participated in the illegal commodification of women via sex trafficking.

63. Upon information and belief, Defendant Jacob still runs a business, Jacob and Co., licensed to do business in New York with its headquarters located at 48 East 57th Street, NY 10022.

**DEFENDANT VIBE MAGAZINE**



64. Upon information and belief, Defendant VIBE runs a magazine, licensed to do business in New York with its headquarters located at 475 5th Ave. New York, NY 10022.

65. Defendant VIBE has had an ongoing relationship with Defendant Combs and all of Defendant's Enterprises include BBE, SJC and CGE, was corrupt and exploitive to Plaintiff and to benefit Defendant VIBE and other members of the corrupt organization.

66. Defendant VIBE's ongoing beneficial relationship with Defendant Combs dates back as far as 1993.

67. Defendant VIBE further injured Plaintiff in an effort to further the corrupt organization when it published Plaintiff's picture, in the issue pictured above, without Plaintiff's notice or consent, written or otherwise.

### DEFENDANT PENSKE MEDIA CORPORATION



68. Upon information and belief, Defendant PMC is the owner and the parent company of Defendant VIBE.

69. Upon information and belief ,PMC is a Delaware corporation with its headquarters in California.

70. Defendant PMC does business in New York throughout its ownership of Defendant VIBE and its distribution of several media outlets that are distributed, marketed and consumed in this jurisdiction.

### DEFENDANT JOHN and JANE DOES 1-10 and Organizational Does 1-10

71. Upon information and belief, Plaintiff alleges that Defendant Does 1 through 10, inclusive, are other parties not yet identified who have violated Plaintiff by sex trafficking her, conspired, and/or aided and abetted the Defendant in sex trafficking the Plaintiff through their participation in a corrupt organization that contributed to the

Plaintiff being sex trafficked or having engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained, pursuant to CPLR §1024.

72. Upon information and belief, Plaintiff believes all of the Defendant Does 1-10 are citizens of the State of New York and/or Florida.

73. Upon information and belief, Plaintiff believes and thereon alleges that at all times relevant hereto each of the Defendant Organizational Does 1-10 were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of Defendants Combs, BBE, SJC and/or CME and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

74. Upon information and belief, Plaintiff believes all of the Defendant Organizational Does 1-10 are business licensed and/or doing business in the State of New York and/or Florida.

75. Upon information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have violated Plaintiff by sex trafficking her, and/or conspired through their participation in a corrupt organization that contributed and aided and abetted the Defendant in sex trafficking the Plaintiff or

having engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained, pursuant to CPLR §1024.

76. The limitations Article 16 of the CPLR do not apply because one or more of the exceptions set forth in CPLR §1601 and/or §1602 apply.

### PLAINTIFF ADRIA ENGLISH



77. Plaintiff is an individual who is a citizen of the United States and a resident of California.

78. Plaintiff, at all times relevant to the action, resided and was domiciled in the State of New York.

79. Prior to moving to New York, in or around early 2004, Plaintiff participated as an actor in the adult film industry under the name "Omunique."

80. Plaintiff participated in approximately eight adult films prior to moving to New York which were done while Plaintiff was a teenager. Plaintiff was coerced by veteran porn

star Jake Steed into doing these films with the promise they would never be viewed or circulated within the United States.[13]

 

81. Plaintiff moved to New York from California to evade the disappointment of her family when they discovered she was acting in adult movies, as Plaintiff was led to believe the adult movies would only be seen and purchased abroad therefore difficult to be viewed by those who knew her personally.

82. Plaintiff moved to New York, destitute and homeless with her then-boyfriend, starving up and coming model Anthony Gallo.

---

[13] https://www.tnaflix.com/amateur-porn/Omunique-vs.-Jake-Steed-Black-Street-Hookers-18/video5461090
https://xxxbunker.com/omunique_is_ready_to_fuck
https://spankbang.com/6lb3e/video/jake+steed+ft+omunique+part+1
https://www.holedk.com/sugarwalls-7/
https://www.holedk.com/booty-talk-4/



83. While Plaintiff's then-boyfriend auditioned for modeling gigs and attended go-sees in New York, Plaintiff began go-go dancing and performing at Larry Flint's Hustler Club on 51st Street in New York under the stage name of "Sasha."



84. On or about mid 2004, Mr. Gallo attended an audition for a Sean John modeling campaign in New York where Plaintiff accompanied him.

85. During that audition, another model and Mr. Gallo were asked to perform felatio on Defendant Combs in order to book the modeling campaign.

86. Mr. Gallo refused but was later reapproached by employee, Defendant Thomas, offering new terms. The terms being that Mr. Gallo could still book the Sean John campaign if he commanded the Plaintiff to work Defendant Combs' and BBE's upcoming "White Party"

in the Hamptons as a go-go dancer, as Plaintiff was a well-known talented and highly

sought after dancer at Larry Flint's Hustler Club.

87. In an effort to assist Mr. Gallo's desire to become a model, Plaintiff agreed to what she

believed to be legitimate employment with Defendant Combs and BBE as entertainment

at the "White Parties" in the Hamptons, NY and Miami, FL from 2004-2009. Plaintiff did

not agree to a lifetime of aftermath of being used as a sexual pawn for the pleasure and

financial benefit of others.

## **FACTUAL ALLEGATIONS**

### **Plaintiff's Employment at Defendant Combs' Labor Day "White Party"**

88. As agreed to between Mr. Gallo, Defendant Thomas and Defendant Combs, SJC and

BBE, Plaintiff began her employment at the ultra-exclusive and lavish Labor Day parties

thrown by Defendant Combs and BBE called the "White Party," and Mr. Gallo began his

employment as a Sean John Model.



89.  Plaintiff's first employment at a "White Party" was Summer, 2004.



90. Plaintiff believed this to be a legitimate employment opportunity.

91. Plaintiff was picked up by Defendant Thomas in a car driven by one of the Defendant Does owned either by Defendant Combs, BBE, SJC, CGE or Organizational Doe, and transported to Defendant Combs' estate in the Hamptons, NY which served as the venue for the Labor Day "White Party."

92. When Plaintiff arrived at Defendant Combs' Hampton Estates with Defendant Thomas, and other sex trafficked individuals, Defendant Thomas brought them into a room where they changed into clothes provided for them.

93. Plaintiff's outfit in the above picture was provided to her as a uniform as she was led to believe she was in an employment capacity, and Plaintiff was required to wear the clothing provided as part of her employment.

94. Plaintiff was also provided a separate room from the party, away from where the partygoers congregated, that was used by Plaintiff and other employees as a break room to take respite during the party as Plaintiff was there in an employment capacity.

95. Plaintiff was encouraged directly by Defendant Thomas to provide lap dances and be sexually flirtatious with the guests at the "White Party."

96. Plaintiff was also instructed and directed by Defendant Combs as to which guests Plaintiff should focus attention and interaction with to ensure his guests were having a great time.

97.  Plaintiff was strictly instructed by Defendant Combs and Thomas on which bottles of alcohol and champagne female employees were to exclusively drink from and also required Plaintiff to take narcotics offered by a "White Party" guest.

98. Despite being forced to drink copious amounts of alcohol and consume illicit narcotics, the encounters Plaintiff was forced to endure were so excruciating that Plaintiff remembers them as they still haunt her to this day.

99. Plaintiff was forced to consume liquor and illicit narcotics as part of her employment at the "White Party."

100.     Upon information and belief, Defendant Combs laced the liquor with ecstasy which is why Plaintiff was provided strict rules on which bottles to consume from.

101.     Plaintiff performed to the expectations of Defendant Combs, was personally

thanked for her obedience by Defendant Combs and was subsequently invited for future

employment at the "White Parties."

102.     Plaintiff was paid, in cash, at the end of the night typically between 4-6 am once

the party had concluded. Plaintiff was paid by Defendant Thomas who was given the

money from Defendant Combs.

103.     The first "White Party" in 2004 had no sinister intent or requirements for physical

sexual contact and seemed to be a legitimate employment opportunity; so, when Plaintiff

was offered employment in the proceeding years at the Labor Day "White Party," she

accepted the employment opportunity.

104.     Plaintiff was employed as entertainment at subsequent "White Parties" in the

Hamptons, NY.

105.     Plaintiff was always transported to the Hamptons by way of car service provided

by either Defendant Combs, BBE, SJC, CGE or Organizational Does, with a driver who

was also an employee of either Defendant Combs, BBE, SJC, CGE or Organizational

Does and with Defendant Thomas also being present as liaison and coordinator between

employees and Defendant Combs.

106.     Plaintiff would use numbers provided to contact either, or both, Defendant Combs

and Thomas to arrange transportation to the "White Parties." This included using the

telephone and text messaging services to confirm the date, time and location of pick up.

107.     Defendant Thomas would then arrive at the location provided by Plaintiff, at the

agreed date and time, in a chauffeured driven vehicle provided, or under the control of,

Defendant Combs which would include Defendant Thomas, a member of Defendant

Combs' security team and other employees who were hired as entertainment for the party.

108.     Plaintiff was always provided wardrobe by Defendants Thomas and Combs and also was provided a breakroom while attending the "White Parties."

109.     Defendant Thomas and Combs groomed Plaintiff into sex trafficking over time.

110.     Around the third "White Party," Defendants Thomas and Combs demanded Plaintiff begin engaging in vaginal sexual intercourse with guests, as they had learned about her past in adult entertainment and used it forcefully to coerce Plaintiff into sex work for the benefit of Defendant Thomas and Combs and their beneficiaries.

111.     During this "White Party," Plaintiff was provided a "black dress" to wear by Defendants Thomas and Combs when previously Plaintiff was provided white clothing like other guests and the theme of the party.

112.     Upon information and belief, Plaintiff believes she was required to wear a black dress to the "White Party" to denote her capacity there as an employee, but more sinisterly as a sex trafficked sex worker.

113.     One beneficiary is Defendant Jacob, who Plaintiff was demanded by Defendant Combs to engage in sexual intercourse during a "White Party."

114.     Plaintiff, fearing not only her safety, but her and her then-boyfriend's job security, did as instruct and went with Defendant Jacob where she engaged in forced sexual intercourse with Defendant Jacob at the demand and behest of Defendant Combs. Plaintiff knew refusing Defendant Combs demands was not an option and to do so would be at her and Mr. Gallo's detriment.



115.    Plaintiff was coerced by Defendant Combs into consuming copious amounts of,

allegedly laced, alcohol prior to being coerced and forced into having sexual intercourse

with Defendant Jacob.

116.    Plaintiff is pictured with Defendant Jacob after the assault as Plaintiff was still in

her role of employment at the "White Party."



117.	Plaintiff received an additional one thousand dollars, in cash, on top of what she had received as payment at the prior two "White Parties" from Defendant Thomas at the end of the night.

118.	At the end of the night, Defendant Combs, personally, congratulated Plaintiff for following his directives with Defendant Jacob and for a job well done.

119.	Plaintiff has personally witnessed Defendant Combs, Thomas and Jacob solicit and ingest narcotics and engage in illicit sex acts.

120.	Plaintiff was also employed at the "White Parties" that commenced at Defendant Combs' Miami, Star Island, residence.

121.	During these "White Party" employments, Plaintiff's travel was arranged by Defendant Thomas. Upon arrival at Ft. Lauderdale airport, a car service owned and operated by either Defendant Combs, BBE, SJC, CGE or Organizational Does would retrieve Plaintiff, Defendant Thomas and the other individuals from the airport and transport them to Defendant Combs' residence on Star Island.

122.     Defendant Thomas was to Defendant Combs as Ghislaine Maxwell was to Jeffrey

Epstein.

123.     Without Defendant Thomas, a woman using her inherent good will as a woman to

gain the trust of another woman, coordinating and acting as an avatar for Defendant

Combs, Defendant Combs would be unable to execute his corrupt sex trafficking

organization.

124.     Plaintiff is unable to recall details from the Miami "White Parties" due to the

increased demand that Plaintiff engage in illicit narcotics and alcohol use while employed

for Defendant Combs.

125.     Defendants Thomas and Combs passed off Plaintiff to other Defendants, outside

of Defendant Jacob named as Defendant Does, to be sexually assaulted as part of their

ongoing corrupt sex trafficking organization.

126.     Upon information and belief Plaintiff, believes Defendant Combs had hidden

cameras in every room of his home in the Hamptons, NY and Star Island, Miami, FL.

127.     Upon information and belief, Defendant Does, who were individuals Defendants

Thomas and Combs passed off Plaintiff to be sexually assaulted, were filmed by

Defendant Combs security cameras sexually assaulting Plaintiff while Plaintiff is

unconscious during the "White Parties" in both New York and Florida.

128.     Upon information and belief, these individuals and Plaintiff, were recorded

without their knowledge and consent.

129.     Upon information and belief, this treasure trove of evidence in Defendant Combs'

possession may either still be in Defendant's possession or in the possession of the FBI,

as the FBI executed a warrant and raided Defendant Combs residences in April 2024.

**Defendant Combs Makes Promises of Career Advancement by way of Music Artist to Plaintiff**

130. Defendant Combs is very forceful, demanding and does not take no for an answer and would often threaten to inflict bodily harm and/or terminate Plaintiff or her then-boyfriend's, Mr. Gallo, employment and "blackball" them from the industry if Plaintiff did not comply with his demands. As Defendant Combs acted and was viewed in such a way to where Mr. Gallo and Plaintiff believed he had the power where Defendant Combs threats were credible.

131. Defendant Combs used his power, and influence to threaten and intimidate Plaintiff to continue participating in Defendant Combs' corrupt sex and drug trafficking organization.

132. Defendant Combs, in an effort to continue to silence Plaintiff and keep her in his sex trafficking organization, offered to help Plaintiff enter into the music business as a part of an all-female music group.



My girl group when I worked for @diddy

133.    Plaintiff knew of Defendants Combs' prowess in the music industry and knew he

had the power to help her advance her music career.

134.    Plaintiff believed Defendant Combs would fulfill his promises to help her career

just as he had helped Plaintiff's then-boyfriends modeling career.

135.    Plaintiff, having been professionally exposed to the music industry side of

Defendant Combs' empire, grew more aware of the true nature of her employment at the

"White Parties" was grotesque, inexcusable, exploitative and criminal.

136.    Plaintiff's only way to escape Defendant Combs was to return to California,

which Plaintiff did in 2009.

137.     Upon information and belief, in retaliation for Plaintiff's escape, Defendant

Combs had Plaintiff's then-boyfriend, Mr. Gallo, "blackballed" from the modeling

industry and had all of Mr. Gallo's campaigns with Sean John removed.

138.     Upon information and belief, in retaliation for Plaintiff's escape, Defendant

Combs had Plaintiff "blackballed" from the entertainment industry.

**Defendant Combs' Corrupt Sex and Drug Trafficking Organization Has Caused Plaintiff**

**Lifelong Harm**

139.     Plaintiff became severely depressed and began to blame herself for being

trafficked and for sabotaging her own career.

140.     Being sex trafficked and abused has led Plaintiff into a tailspin of anxiety and

depression.

141.     In or about 2010, Plaintiff was hospitalized for mental illness as a direct cause of

her being trafficked by Defendants.

142.     Everywhere Plaintiff looked, she was reminded of being trafficked by Defendant

Combs, as he is an inescapable presence in music, television, and film.

143.     In the ensuing years, Plaintiff has also experienced alcohol and drug addiction, as

she attempted to cope with the emotional trauma of being assaulted and trafficked.

144.     Plaintiff has also experienced intimacy issues, as she struggles to maintain

emotional and sexual relationships with men.

145.     Plaintiff was recently married, however fears her marriage may fall apart  due to

her mental breakdowns precipitated by memories of the assault and trafficking.

146.     Defendant Combs has altered the trajectory of Plaintiff's career, denying her a successful and lucrative career in the music industry.

147.     To this day, Plaintiff experiences bouts of depression, anxiety, body image issues, feelings of worthlessness, and intimacy issues because of being trafficked by Defendant Combs.

148.     Plaintiff is a woman of faith and when she saw news coverage of the countless lawsuits, initiated by brave other individuals against Defendant Combs, she knew she had a moral obligation to speak up.

149.     Plaintiff feared further violence and/or retaliation from Defendant Combs in filing this lawsuit, but ultimately decided that it was imperative she speak her truth with the hopes that no other individual would have to endure the egregious and heinous treatment she has.

150.     Plaintiff seeks justice for herself and for any of other Combs' victims.

## Trafficking And Victims' Protection Act

151.      According to Plaintiff, she was transported from New York to Florida throughout by Defendant Combs for the purpose of engaging in sexual activities.

152.     Plaintiff asserts during this time; Plaintiff was forced to engage in sex work and perform sex acts to the pleasure of and the behest of Defendant Combs.

153.     Between 2006-2009, Defendant Combs forced Plaintiff to engage in prostitution and sex work at his homes in Hampton, NY and Miami, Florida.

154.     Plaintiff asserts that Defendants VIBE and PMC were involved in Defendant Combs organized sex trafficking Enterprise.

155.     Plaintiff asserts that Defendants VIBE and PMC's involvement in the Enterprise

included providing Defendant Combs' resources like intentionally and falsely marketing

and promoting Defendant Combs' "White Parties" in its publication as a high-profile

networking and social event in an effort to disguise and deceive the real intent of the

event which was to further Defendant Combs, and his various businesses including BBE,

SJC, CGE, and VIBE and PMC's profits.

156.     In furtherance of Defendants illegal Enterprise Defendants VIBE and PMC

ensured Defendant Combs, and his businesses BBE, SJC, and CGE, appeared

overwhelming in its magazine be it on covers or pages inside Defendants magazine

featuring pages dedicated to Defendant Combs personally or his businesses.

157.     Plaintiff believes Defendants VIBE and PMC engaged in Defendant Combs'

illegal Enterprise to increase the visibility and profitability of its publication, VIBE

Magazine, through the magazine's constant affiliation and relationship with Defendant

Combs.

158.     Plaintiff seeks justice against all Defendants for sex trafficking.


### Claims Related To Plaintiff's Picture And Likeness

159.     On or around Labor Day, 2004, Plaintiff's picture was taken while in her

employment capacity at Defendant Combs' "White Party" in Hampton, NY.

160.     Plaintiff did not know what her picture was being taken for, or would be used for,

nor was Plaintiff's consent sought or given.

161.     Plaintiff has never entered into any agreement with any Defendant to license her

likeness, nor was it a term for employment at the "White Party."

162.     Defendant VIBE, and PMC, intentionally mislabeled Plaintiff as a guest at the

"White Party" in its magazine to further conceal the true intentions of the event and

Plaintiff's employment role at the event in an effort to further the goals of the Defendants

illegal and criminal Enterprise.

163.     Defendant VIBE and PMC exploited Plaintiff's likeness in their November 2006

magazine, where Defendant Combs was the cover and the story was about Defendant's

"White Parties," which by this point was a cultural phenomenon.



164.     Plaintiffs' unauthorized, non-consensual and infringing use of her picture and

likeness appears on Page 140 of the magazine.



165.     Plaintiff did not discover the infringing use until approximately April, 2024.

166.     This infringing use promoted, without limitation, products synonymus with Defendant Combs including the "White Party" and Defendants BBE, SJC and CGE.

167.     Plaintiff is readily and easily identifiable in the infringing use, and her picture and likeness is prominently displayed in Defendants VIBE and PMC's publication.

168.     The aforementioned act violates Plaintiff's rights to privacy via misappropriation.

169.     Plaintiff has never given any Defendant a release to use her likeness in any publication or platforms, media or formats digital, physical or otherwise.

170.     The November 2006 issue of Defendants VIBE and PMC is still readily available for sale and viewable online.

171.     At all relevant times, Plaintiff had the sole and exclusive right of publicity with regard to the use of her picture, portrait, and likeness under New York State Law and Common Law Right of Publicity.

172.     Defendants have, without Plaintiff's authorization or consent, since used Plaintiff's likeness for advertising and other trade purposes without consent and without a license to promote Defendant Combs, BBE, SJC, CGE, VIBE and PMC products for commercial gain. Plaintiff is further informed and believes and thereon alleges that Defendants VIBE and PMC used Plaintiff's likeness in its magazine nationwide, including in this District.

173.     None of the Defendants at any point had a license for the use of Plaintiff's picture and likeness to promote the "White Parties."

174.     At no point did Plaintiff authorize, consent to, or otherwise seek to allow the Defendants, or any of them, to exploit her picture, image, or likeness as seen in the infringing use in any manner.

175.     Plaintiff is informed and believes and thereon alleges, that Defendants, and each of them, engaged in the unauthorized exploitation and misappropriation of Plaintiff's photograph, image, picture, and likeness by prominently featuring Plaintiff in an advertisement and marketing materials for Defendant Combs, BBE, SJC and CGE on various online platforms and physical materials, including but not limited to the infringing use.

176.     Plaintiff is informed and believes and thereon alleges, that Defendants, and each of them, engaged in the unauthorized exploitation and misappropriation of Plaintiff's photograph, image, picture, and likeness in an effort to further and continue their corrupt sex and drug trafficking organization.

177.     Through their general business partnership, and financial support of Defendant Combs, Defendants VIBE and PMC aided and abetted Defendant Combs' actions as herein.

178.     Defendants' publication and distribution of the infringing use has resulted in substantial injury to Plaintiff.

**FIRST CAUSE OF ACTION**

**CONDUCT AND PARTICIPATE IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY A VIOLATION OF RACKETEER INFLUENCED ANDCORRUPT ORGANIZATION ACT, CODIFIED AT 18 U.S.C. § 1962(A), (C)-(D) (Against ALL Defendants)**

179.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

180.     Defendants VIBE and PMC are 100% liable for the actions of Defendant Combs, and by extension, BBE, SJC, CGE, and Thomas ("RICO orchestrators"). Defendants VIBE and PMC financially benefited from Defendants Combs, BBE, SJC, and CGE through their partnership with Defendant Combs and the brands he owned, listed as Defendants above. The collective provided the RICO orchestrators with unfettered access to resources and failed to adequately investigate, supervise, and or monitor how those resources were being used, who was using those resources and the purpose of use of those resources.

181.     The support provided by Defendants Thomas, Jacob, BBE, SJC, CGE, VIBE and PMC was a lifeline that spearheaded and maintained the RICO orchestrators' depraved actions. Upon information and belief, the establishment of a business relationship with a prominent publication, VIBE, PMC and Combs allowed for distribution platform for all Defendant Combs business endeavors to disguise his true intentions with overly broad and vague in nature description of activities. Defendants VIBE and PMC knew or should have known that Defendants Combs, BBE, SJC, and CGE had no intention to utilize the resources he received for business related purposes and they did not put any mechanism in place to ensure that their resources, specifically their publication, were not being used for any illegal activity. Defendants VIBE and PMC willful blindness resulted in Plaintiff suffering the harm detailed herein.

182.     Defendants are individuals and entities within the meaning of "person" as defined in 18 U.S.C. § 1961(3) because each is capable of holding, and does hold, "a legal or

beneficial interest in property." The association is composed of Defendants Combs, BBE,

SJC, CGE, VIBE, PMC, Thomas, Jacob, John and Jane Does 1-10, and Organizational

Does 1-10.

183.     In the relevant part, 18 U.S. Code 1961 defines a racketeering activity as:

(1) (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, ***dealing in obscene matter, or dealing in a controlled substance or listed chemical** (as defined in section 102 of the Controlled Substances Act)*, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... *section 933 (relating to trafficking in firearms)*, section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), ***sections 1461–1465 (relating to obscene matter), section 1511 (relating to the obstruction of State or local law enforcement)***, ***sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)***, section 1952 (relating to racketeering), section 1956 (relating to the laundering of monetary instruments), (D) any offense involving fraud connected with a case under title 11...the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical.

184.     Section 1962(a) makes it: ***unlawful for any person who has received any income***

***derived, directly or indirectly, from a pattern of racketeering activity*** or through a

collection of an unlawful debt in which such person has participated as a principal within

the meaning of Section 2, Title18, United States Code, to use or invest, directly or

indirectly, any part of such income, or the proceeds of such income, in the acquisition of

any interest in, or the establishment or operation of, any Enterprise which is engaged in,

or the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a).

185.     Section 1962(c) makes it: ***unlawful for any person employed by or associated***

***with any Enterprise engaged in,*** or the activities of which affect, interstate or foreign

commerce, ***to conduct or participate***, directly or indirectly, in ***the conduct of such***

***Enterprise's affairs through a pattern of racketeering activity.*** 18 U.S.C. §1962(c).

186.     Section 1962(d) makes it: unlawful for *"any person to conspire to violate"*

Section 1962(a) and (c), among other provisions. 18 U.S.C. § 1962(d).

187.     Defendants mentioned herein are associated with each other as an Enterprise

within the meaning of "Enterprise" as defined in 18 U.S.C. § 1961(4).

188.     Plaintiff, in its pleading, has detailed many acts by Defendants Combs, BBE, SJC,

CGE, VIBE, PMC, Thomas, Jacob, Does 1-10 and Organizational Does 1-10, which are

prohibited under 18 U.S.C. §1962.

189.     Defendants have unlawfully increased their profits by luring and deceiving

individuals such as Plaintiff to their organization for the misstated purpose of using their

talents as entertainment. Defendants' true intentions are later revealed through a

calculated grooming scheme that involves false promises of business opportunities,

exposure to high level celebrity individuals including: former President Donald Trump,

Reverend Al Sharpton, and Paris Hilton, music mogul Jay-Z, and music executives like

Russell Simmons, Irv Gotti, Steve Stout, Andre Harrell, and Lyor Cohen, with the

promise of introductions, networking, fame and fortune which quickly shifts to

unauthorized drugging, threats and sex trafficking.



11.06

**1998**
"There were many illustrious guests at the White Party, but Puffy was the star attraction."
—Donald Trump

**1998**
Simmons with a fresh face Kimora Lee.

**1998**
The pre-Fergie Black Eyed Peas show love.

"I remember being with Betsey Johnson, Donna Karan, and Ronald Perelman—all of us were trying to figure out if we should buy a white outfit to make sure we got in."
—Russell Simmons

# CONTENTS

**122 // ON MY OWN**
After getting dropped by both G Unit and Aftermath, the odds seemed stacked against **THE GAME.** But this underdog's back. *By Allen Scott Gordon. Photographs by Jonathan Mannion.*

**126 // YOU DON'T KNOW ME, BUT...I'M YOUR BROTHER**
**TAYLOR HICKS** may just be the most successful American Idol yet. But who's really feeling his gray-haired soul man routine? *By Jon Caramanica. Photographs by Joaquin Palting.*

**130 // DELIVERANCE**
The son of a hustler and a preacher, **LIL SCRAPPY'S** been battling God and the Devil his entire life. Now he's got 50 Cent and Lil Jon on his side. *By Laura Checkoway. Photographs Julia Beverly.*

**132 // ...AND STILL CHAMPION**
**SEAN "DIDDY" COMBS IS READY TO TAKE ON ALL COMERS**
The ruler's back. With a new Bad Boy roster making noise on the Nielsen SoundScan charts and a best-selling fragrance, **SEAN COMBS** sits down for a candid Q&A. *By Danyel Smith. Photographs by Matthias Clamer.*

**135 // CHANGE CLOTHES—AND GO THE NOTORIOUS B.I.G.** was 'hood certified. So how did Puffy transform the kid in the "red and black lumberjack" into a fashion icon? *By Mark Allwood.*

**136 // BEEN AROUND THE WORLD**
Bad Boy's influential production unit, **THE HITMEN,** remember the session that made legends. *By Gregory Johnson*

**138 // WHITE HEAT**
VIBE cleans up to give you access to PD's exclusive **WHITE PARTY.** *By Keith Murphy*

**141 // BAD BOY'S GREATEST MISSES**
Because sometimes it just has to s

**142 // MO MONEY, NO PROBLEM**
The hip hop Frank Sinatra's strikin diverse business empire is arguabl as gangsta as it ever was. *By Robert LaFranco*

(CONTINUED ON PAGE 18)





190.    While employed by Defendant Combs at the "White Parties," Plaintiff witnessed

Defendant Combs instruct, direct Defendant Thomas and other employees to acquire and

transport the illicit narcotics. Plaintiff personally witnessed Defendant Thomas transport

illicit narcotics to and from the "White Parties" in New York and Florida. Plaintiff

personally witnessed Defendant Combs ingest and distribute the illicit narcotics once he

received them. Plaintiff personally witnessed and was directed by Defendant Combs to

engage in sex work while employed as an entertainer at the "White Parties." Plaintiff was

required to engage in sex acts with attendees at the "White Parties" when instructed by

Defendant Combs or Thomas. Plaintiff would be paid in cash for complying with the

demands for se work and there was no negotiation between Plaintiff and either Defendant

Combs, Thomas or the party receiving services regarding a price to be paid for Plaintiff

complying with sex work demands.

191.    The RICO Enterprise activities affected interstate commerce, is comprised of an

association of persons, including each Defendant and other unnamed co-conspirators

herein. That association was structured by various agreements, deals, contracts, and non-

contractual relationships between the Defendants, by which Defendants assumed

different roles in knowingly and directly or indirectly participating in the acts necessary

to carry out the directives of the Enterprise which was to acquire and distribute narcotics,

prostitutes, and sex workers. Defendants also worked collectively to deceptively obtain

the labor of models and entertainers, such as Plaintiff and Mr. Gallo, to utilize their

talents and labor to produce tangible goods and services without full compensation. As

detailed herein, Plaintiff worked for Defendant Combs for several years. Additionally,

Plaintiff's then-boyfriend, Mr. Gallo, was also employed by one of Defendant Combs'

businesses Defendant SJC. Employee Defendant Thomas solicited Plaintiff, via Mr.

Gallo, to work for Defendant Combs at his "White Parties" as entertainment. Plaintiff

was never allowed to negotiate a rate for her employment with Defendant Combs. In fact,

Plaintiff agreeing to employment with Defendant Combs was a condition precedent to

Mr. Gallo gaining his employment with Defendant Combs as a model with Defendant

SJC. Plaintiff fulfilled the condition precedent by providing services of sex work

demanded by Defendant Combs at his "White Parties." Defendant Combs benefited from

Plaintiff's forced sex work, did not compensate Plaintiff fairly and ultimately blackballed

Plaintiff, and Mr. Gallo once she no longer cowered to Defendant Combs' demand for

continued participation.

192.    Defendants Combs, BBE, SJC, CGE, VIBE, PMC, Thomas, Jacob, Doe 1-10, and

Organizational Doe 1-10 all share a common purpose: to use deception, coercion, force,

and the threat of violence to enrich themselves at the expense of individuals like the

Plaintiff. As set forth herein, although all Defendants may not have directly threatened

coerced, forced or violently threatened Plaintiff, they financially benefitted from

Defendants Combs, BBE, SJC, CGE, Thomas, and Jacob's scheme of defrauding, and

intimidating the Plaintiff with threats of destitution and isolation from the music and

entertainment industry (which Defendant Combs made good on as there is no evidence of

Mr. Gallo's Sean John campaign available and both Plaintiff and Mr. Gallo were

effectively banned from the industry after Plaintiff refused continuing her employment at

the "White Parties"), fake promises of a music career, guaranteed access to future

exclusive celebrity events, fame and fortune. It is reasonable to believe Defendants

Combs, BBE, SJC, CGE, VIBE, PMC, Thomas, Jacob, Doe 1-10, and Organizational Doe 1-10 would not have engaged in these acts of threats but for the existence of the RICO scheme and their understanding that they would have unfettered access to engage in their illegal and corrupt Enterprise without question.

193.     As evidenced in Plaintiff's complaint herein, Defendants all orchestrated, participated, managed, and executed the RICO Enterprise.

194.     Defendants Combs, Thomas and Does purchased and distributed illegal narcotics to employees and guest of the "White Parties." Defendants transported the narcotics by flying on commercial airlines from New York to Florida and distributed the narcotics to guests of the "White Party" and/or to Defendant Combs directly.

195.     The RICO Enterprise has functioned as a continuing unit and maintains an ascertainable structure separate and distinct from the pattern of racketeering activity.

196.     This is the second case in this jurisdiction where Defendant Combs has been accused of engaging in racketeering, and both cases have similar fact patterns and descriptions of racketeering activities.

197.     Defendant Combs has a pattern of making false representations and omissions to entertainers who used their talents to provide services to the RICO Enterprise. These false representations and omissions were designed to induce people like the Plaintiff to utilize their talents and labor to provide entertainment and engage in forced sex work services without full compensation. Entertainers, like Plaintiff, were also forced to solicit and participate in sexual encounters with guests of the "White Parties" as part of their employment capacity. Entertainers, like Plaintiff, were also required to purchase and distribute narcotics. As further part of the Enterprise, Defendant Combs required

entertainers, like Plaintiff, wear clothing provided by Defendant Combs, so that she could easily be identified as a sex worker by the partygoers.

198.     Additionally, Defendant Combs used the prospects of a music career, participating in future "White Parties" and meeting influential music industry executives, coupled with threats to blackball Plaintiff, and her then-boyfriend, if they did not comply with Defendant Combs demands. This pattern of false representations was disseminated to Plaintiff in Florida and New York. The dissemination typically used interstate telephone wires.

199.     The true nature of Defendants' Enterprise was left undisclosed, was omitted, and/or was affirmatively misrepresented, all to fraudulently increase Defendants' profits, at least some of which were used to expand the Enterprise, causing further injury to Plaintiff and possibly many others.

200.     Upon information and belief, Defendants profited from the Enterprise, and Plaintiff suffered because the Enterprise diminished Plaintiff's finances for nonpayment of services rendered and diminished Plaintiff's health through consistent drugging and forced sexual encounters as a sex trafficking victim. Defendants used the proceeds from the Enterprise to advance the Enterprise by funding and operating their marketing machine, including through the use of the mail, magazine coverage, word of mouth, and interstate wires to sell the illusion that Defendant Combs was a serious and legitimate businessman who held exclusive networking events that would allow entertainers the opportunity to maximize their skills in the entertainment industry when nothing could be further from the truth.

201.    Defendants VIBE and PMC were a direct participant in the marketing aspect of the scheme as, in one issue of VIBE Magazine, November 2006, Defendant Combs received an astonishing 18 pages of advertisement including the cover of the magazine, the centerfold cover, and several direct 2-page advertisements for Defendant Combs' other Enterprises within CGE, including clothing, liquor and a cologne called "UNFORGIVABLE." The tagline for "UNFORGIVABLE" cologne was "Life without passion is UNFORGIVABLE." Who knew Defendant Combs' true passion was being the head of a corrupt organization that abused women, and trafficked sex and narcotics.





Two- page "UNFORGIVABLE" cologne advertisement featuring Kimora Lee Simmons.







Sean John campaign featuring Defendant Combs son, Justin Combs.

Childhood photos of Defendant Combs used to humanize him in furtherance of the conspiracy.





Multiple Covers of Defendant Combs for Defendants VIBE and PMC publication "VIBE Magazine."



47

Two- page Centerfold Poster of Defendant Combs
"and still champion"



Defendant Combs with Jennifer Lopez on World Tour



Several pages dedicated to Defendant Combs Labor Day "White Parties" in the Hamptons, NY and Star Island, FL







202.    To reiterate, Defendants Combs, BBE, SJC and CGE appeared in 18 (eighteen) pages including the cover of Defendants VIBE and PMC's publication "VIBE Magazine" in a SINGLE issue.

203.    Defendants provided the general public at large this misrepresentative information, including over interstate wireline communications systems via their nationwide publishing VIBE magazine which is available in print and online.

204.    Upon information and belief, Defendants obtained revenue via wire transfers, documents, and banking transactions that were exchanged via electronic means over interstate wires, thereby growing the Enterprise and causing further injury to Plaintiff as described throughout.

205.    Defendants' scheme was reasonably calculated to deceive Plaintiff of ordinary prudence and comprehension through the execution of their complex and illegal scheme to misrepresent the true purpose of employment at Defendant Combs' "White Parties"

and that employment at those parties would not and could not lead to a career in the
music industry, fame nor fortune. Plaintiff would have never engaged in any regard with
Defendant Combs for five years if not but for the complex and illegal racketeering
scheme operated by Defendants.

206.    Upon information and belief, Defendants each had the specific intent to
participate in the overall RICO Enterprise and scheme to defraud Plaintiff and each
participated in the Enterprise as follows:

207.    Upon information and belief, Defendants Combs, BBE, SJC, CGE, VIBE and
PMC control and participate in the activities of the Enterprise in a variety of ways as set
forth herein, including but not limited to, developing marketing campaigns to legitimize
the "White Parties" as a "way to integrate hip hop into the echelons of the mega-rich, to
find an intersection of both worlds for the sake of unity."[14]

208.     Upon information and belief, throughout the relevant period, Defendant VIBE
and PMC entered into a partnership agreement with Defendant Combs, BBE, SJC and
CGE. As general business partners, each member is responsible for the partners' actions
in the partnership. Defendants VIBE and PMC have an ethical obligation to ensure their
business partners, Defendant Combs, BBE, SJC and CGE, were not using the partnership
to engage in illegal activity.

209.    Defendants VIBE and PMC provided resources to their general business partners,
Defendants Combs, BBE, SJC and CGE. Defendants Combs, BBE, SJC and CGE used
the resources provided by their general business partners to solicit through the mail,

---

[14] https://www.yahoo.com/entertainment/diddy-white-party-labor-day-celebrity-fashion-photos-style-hip-hop-120027194.html

world wide web, and telephone entertainers whom they would promise music careers, modeling careers and meetings with powerful music industry executives. Defendants Combs and his staff, including Defendant Thomas and Does, would solicit entertainers who resided in New York and Florida. Defendants Combs and his staff, including Defendant Thomas, VIBE, PMC and Does, relied on the mail, world wide web  and telephone to disseminate the misleading information described herein. Defendants Combs, BBE, SJC, CGE, Thomas, VIBE or PMC did not disclose to the individuals they solicited the fact that they would be drugged, required to act as sex workers and forced to perform sex work without compensation.

210.    Defendants authorized the resources to their general business partner, Defendant Combs. In furtherance of the goals of their conspiracy, Defendants VIBE and PMC used the "White Parties" as a ruse to provide Defendants Combs, BBE, SJC and SGE cover to disguise their covert sex trafficking Enterprise. Throughout the relevant period, Defendants Combs BBE, SJC and CGE used the resources their general business partners provided to solicit entertainers. As detailed throughout, they relied on the mail, email, and world wide web to disseminate the misleading information described herein and profit from the free labor of these entertainers. In addition to the forced free labor, they used their power and influence to force these entertainers to engage in sex work and to engage in unwanted sexual encounters with friends and associates of the RICO Enterprise. Defendants also used their power and influence to force these entertainers to purchase, transport, and distribute illegal narcotics. As the general business partner of Defendants Combs, BBE, SJC and CGE, Defendants VIBE and PMC are equally liable for the commission of these acts.

211.    Upon information and belief, Defendant Thomas ensured the cash payments to employees, like Plaintiff, were executed. Plaintiff was never given the opportunity to directly negotiate the fees for forced sex work outside of her employment and would typically be at the sole discretion of Defendant Thomas's grace for payment for sex work. Plaintiff does not recall receiving appropriate United States federal tax documents for payments or if they independently declared these payments on their taxes. It is unclear if Defendants BBE, SJC, CGE, Jacob, VIBE or PNC requested an audit of Defendant Combs business financial records to ensure the resources provided to Defendant Combs was not being used to fund illegal activities like sex and drug trafficking.

212.    During the ten (10) years preceding the filing of this action and to the present, all Defendants did cooperate jointly and severally in the commission of predicate acts itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d), as described in this Complaint.

213.    Beginning at an exact date unknown to Plaintiff, but within ten (10) years preceding the filing of this action, Defendants have knowingly, willfully, and unlawfully participated in a pattern of racketeering activity that continues possibly to this day.

214.    The "Racketeering Acts" followed the same pattern and purpose: to defraud the Plaintiff for the Defendants' benefit. Each Racketeering Act involved the same or similar methods of commission and participants.

215.    Defendants' business would not have succeeded without the repeated predicate acts and the ability to conduct their fraud using mail, telecommunications wires, interstate travel, and possibly money laundering. Which is not far-fetched considering Defendant

Jacob was sentenced to thirty months for activities related to money laundering and required to forfeit over $2,000,000.00 in civil penalties and fees.[15]

216.    The Racketeering Acts all relate to each other in that they were part of concerted actions by Defendants to use the endorsement and channels of the Enterprise to operate their businesses to solicit potential victims as detailed herein.

217.     The separate Racketeering Acts all relate to each other in that they were part of concerted actions by Defendants to use the endorsement and channels of the Enterprise to operate their businesses to fraudulently induce Plaintiff, and others like Plaintiff, to utilize their talents and labor to provide services without full compensation. In addition to the forced free labor, Defendants used their power and influence to force Plaintiff to engage in sex work and to engage in unwanted sexual encounters with others when directed. Defendants, specifically Defendant Combs, used his power and influence to force Plaintiff to engage in sex work but also distribute and consume illegal narcotics.

218.    Defendants' wrongful conduct has injured Plaintiff, remaining part of Defendants' ongoing business practices, and continues to threaten Plaintiff and the public.

219.    Defendants' association with the Enterprise enabled Defendants to conduct, direct, and control a pattern of fraudulent, illegal activities over a substantial number of years, which continues to this day.

220.    To further their collective goals, Defendants worked in concert to engage in various forms of criminal activity, including forcing individuals into sex work by forcing them to solicit and engage in sexual encounters with others and to consume and distribute illegal narcotics at the direction and demand of Defendant Combs'.

---

[15] https://www.cbsnews.com/news/jacob-the-jeweler-jailed/

221.     Defendant's ongoing racketeering activity has injured and continues to injure Plaintiff. Defendant's pattern of forcing Plaintiff and others like Plaintiff, to engage in sex work and engage in sexual encounters with others and to purchase, transport, and distribute illegal narcotics was the proximate cause of the injuries suffered by Plaintiff.

**Defendants Committed Multiple Acts of Sex Trafficking in Violation of 18 U.S.C. § 1591 (Sex trafficking by force, fraud, or coercion) in Furtherance of the Enterprise**

222.     As detailed throughout this complaint, Defendants knowingly affected interstate commerce, by recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting by any means a person, Plaintiff, to engage in illegal sex acts and sex work. In addition to violating federal law, these acts violated the following state statutes: Florida, Penal Code 796.07(2)(f); and New York, Penal Code 230.05.

223.     As detailed throughout this complaint, Defendants BBE, SJC, CGE, Jacob, VIBE and PMC provided resources to Defendant Combs through their general business partnership, Defendants BBE, SJC, CGE, Jacob, VIBE and PMC, and by extension through Defendant Combs, knowingly benefited, financially or by receiving anything of value, in an Enterprise which has engaged in an act described in violation of paragraph (1) of 18 U.S.C. § 1591.

224.     Defendants BBE, SJC, CGE, Jacob, VIBE and PMC, and by extension through Defendant Combs, knowingly, or, except where the act constituting the violation of paragraph (1) 18 U.S.C. § 1591 advertised, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2) of 18 U.S.C. § 1591,

or any combination of such means will be used to cause Plaintiff to engage in several commercial sex acts.

225.      By way of example, in the Summer of 2007, Plaintiff was forced to engage in sex work at the "White Party" at Defendant Combs' home in Hampton, NY with Defendant Jacob. The picture included in this pleading of Defendant Jacob and Plaintiff was taken after Plaintiff was forced to engage in illegal sex acts with Defendant Jacob at the behest and demand of Defendant Combs. Defendant Combs forced Plaintiff to have sex with Defendant Jacob against her will. According to Plaintiff, Defendant Combs' required sex work and engaging in sex acts as part of the employment at the "White Parties." Plaintiff was only paid for her services at the party but not for the sex work she was forced to engage in.

226.      By way of example, between 2004-2009, Plaintiff was forced by Defendant Combs and Thomas to transport herself to Mr. Combs home located in Miami, FL. Plaintiff, upon information and belief, believes there may be videos showing her being sexually assaulted, while unconscious, during the "White Parties" at Defendant Combs' Florida residence.

227.      From at least 2004 through 2009, in the states of New York and Florida, and possibly elsewhere, Defendant Combs and others known and unknown, in affecting interstate commerce, knowingly combined, conspired, confederated and agreed to recruit, entice, harbor, transport, provide, obtain and maintain, by any means, a person, and to benefit, financially and by receiving anything of value, from participation in an Enterprise which has engaged in such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion and a combination of such

means, would be used to cause the person, Plaintiff, to engage in commercial sex acts, to

wit, Defendants Combs, Jacob and others, known and unknown, caused Plaintiff to

engage in commercial sex acts in the United States cities of Miami and New York by

means of force, threats or force, fraud and coercion, and a combination of such means.

228.    In furtherance of the conspiracy and to effect the illegal object thereof, the

following overt acts, among others, were committed in the States of New York, and

Florida:

    a.    In or about 2004, Defendant Sean Combs, through his employee, Defendant

Thomas, recruited Plaintiff to work for him as an entertainer at his "White

Parties." Defendant Combs promised to book Plaintiff's then-boyfriend in the

Sean John Clothing campaign he auditioned for as a model, make Plaintiff a

music artist, and introduce Plaintiff to an ultra-exclusive group of high-profile

individuals to further her career in the entertainment industry.

    b.    In or about 2005, after Plaintiff's second "White Party," Defendant Combs began

more aggressively grooming Plaintiff into engaging in sex work. Defendant

Combs directed Plaintiff with whom to engage in sex work and would give

approval and congratulations after Plaintiff complied with Defendant Combs'

demands.

    c.    As part of his grooming of Plaintiff, Defendant Combs threatened that if Plaintiff

did not continue her employment at the "White Parties" that Defendant Combs

would blackball Plaintiff from the entertainment industry and Plaintiff's then-

boyfriend, Mr. Gallo, from the modeling industry, which Defendant Combs

eventually did anyway.

d.  At the direction of Defendants Combs and Thomas, Plaintiff was forced to engage in sex work at Defendant Combs' homes in Hampton, NY and Miami, Florida. Plaintiff had no authority to be on Defendant Combs' residential premises without Defendant Combs' consent. All of Defendant Combs' properties are protected by 24-hour security, and all visitors must be verified before entry.

e.  Plaintiff communicated with Defendants Combs and Thomas by telephone. Defendant Combs communicated by a California number ending in "1496." However, a search of that number leads to New York-based artist Paloma Baillie[16] as the registered owner. Why or how a number registered to Ms. Baillie is being used by Defendant Combs is another conspiracy for another time. The number Plaintiff communicated with Defendant Thomas is seemingly still registered to Defendant Thomas.





**Paloma Baillie**

Los Angeles, CA



**Tameka T Trapp**

Los Angeles, CA

---

[16] https://www.palomabaillie.com/about

229.     From 2004-2009, in the States of New York, and Florida, Defendants Combs,

Thomas and others known and unknown, in and affecting interstate commerce,

knowingly did recruit, entice, harbor, transport, provide, obtain, and maintain, by any

means a person, Plaintiff, and did benefit, financially and by receiving anything of value,

from participation in an Enterprise which has engaged in any such act, knowing and in

reckless disregard of the fact that means of force, threats of force, fraud and coercion, and

a combination of such means, would be used to cause the person to engage in a

commercial sex act, to wit, Defendants Combs, Thomas and Jacob caused Plaintiff to

engage in commercial sex acts utilizing force, threats of force, fraud and coercion, and a

combination of such means. Additionally, Defendant Combs received personal

gratification by directing and ensuring Plaintiff engage in commercial sex acts with the

individuals Defendant Combs directed her to engage.

230.     From 2004-2009, up to and including currently, in the States of New York, and

Florida, Defendants Combs, Thomas and others known and unknown, in and affecting

interstate commerce did use, and cause to be used, facilities in interstate and foreign

commerce, to wit internet and cellular telephone services, with the intent to promote

manage, establish, carry on and facilitate the promotion, management, establishment and

carrying on of an unlawful activity, to wit, a business Enterprise involving prostitution

offenses in violation of applicable state law, and thereafter performed and attempted to

perform an act to promote, manage, establish and carry on, and to facilitate the

promotion, management, establishment and carrying on of such unlawful activity.

**Defendants Committed Multiple Acts of procuring, transporting, and distributing
controlled substances in Violation of Title 18, United States Code, Sections 1961(1) and
1961(5) Furtherance of the Enterprise**

231.     Defendants knowingly affected interstate or commerce did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5). In addition to violating federal law, these acts violated the following state statutes: Florida, Penal Code 893.135 and New York, Penal Codes 220.77, 220.18, 220.50, and 220.06.

232.     **The Combs Rico Enterprise**:[17] As detailed throughout this pleading, Defendants are an Enterprise as the term is defined pursuant to 18 USCS § 1961 (4). That is, a group of individuals associated, in fact, that engaged in, and the activities of which affected interstate commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit to achieve the Enterprise's objectives.

233.     Upon information and belief, the Combs Rico Enterprise is comprised of individuals residing in and around Los Angeles, California, Miami, Florida, New York, and among other places. Members and associates of the Combs Rico Enterprise have engaged in drug trafficking and sex trafficking.

234.     Upon information and belief, members and associates of the Combs Rico Enterprise procured, transported, and distributed ecstasy, cocaine, and other illicit narcotics, in and around the States of New York and Florida. During the relevant timeframe, through their general business partnership, Defendants provided resources to

---

[17] "Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.S. § 1961

Defendant Combs in furtherance of the Enterprise during its highly exclusive and sought after summer "White Parties."

235.     **The purpose of the Combs Enterprise**: As detailed herein, and according to Plaintiff, the purpose of the Combs Enterprise is to:

   a.  Use its position, power, and influence to control entertainers and force these entertainers to purchase, transport, and distribute illegal narcotics and engage in sex work;

   b.   Promote and enhance the prestige, reputation, and position of the Enterprise with respect to rival music labels, artists and executives;

   c.  Preserve and protect the power, territory, and criminal ventures of the Enterprise through the use of intimidation, threats of violence, and coercion;

   d.  Keep victims in fear of the Enterprise and its members and associates;

   e.   Enrich the members and associates of the Enterprise through criminal activity, including narcotics trafficking, sex trafficking and fraud;

   f.   Conceal the activities of the Enterprise from law enforcement by threatening individuals' livelihoods if they ever spoke about their experiences to others, especially law enforcement.

236.     **Methods and Means of the Enterprise**: Upon information and belief, among the means and methods by which the Defendants and their associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

   a.  Members of the Enterprise and their associates procured, transported and distributed illegal narcotics to Defendant Combs at his homes in New York and

Florida. Plaintiff personally witnessed members of the Enterprise doing this during domestic travel.

b. Members of the Enterprise and their associates used force, coercion, threats, or a combination therein to force Plaintiff to engage in sex work and have sex with "White Party" goers at the direction of Defendant Combs and/or Thomas.

237. The pattern of racketeering activity through which Defendants, together with others, agreed to conduct and participate directly and indirectly, in the conduct of the affairs of the Enterprise consisted of multiple offenses involving dealing in controlled substances, in violation of Title 21, United States Code, Sections 841, 843 and 846. Parts of the conspiracy involved each Defendant agreeing that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

**Defendants Committed Multiple Acts of Mail Fraud in Violation of 18 U.S.C. § 1341 in Furtherance of the Enterprise**

238. Defendants voluntarily and intentionally devised and participated in a scheme with the intent to defraud Plaintiff.

239. Defendants used the mail to execute the fraudulent scheme herein.

240. Specifically, the Defendants agreed to each of the acts of mail fraud described throughout this Complaint. In addition, they agreed to rely on the mail to distribute their marketing materials, VIBE Magazine, secure wires and cash payments from purchasers of the illegal sex services and narcotics they required others to sell, distribute and perform.

241. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Defendants, either individually or in

combination with themselves, used and caused to be used the U.S. mail by both placing

and causing to be placed, marketing materials, advertisements, agreements and other

matters in depositories and by removing, or causing to be removed, letters and other

mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. §

1341.

242.     Defendants could not have furthered their fraudulent scheme without the use of

the mail. For example, without the mail, Defendants VIBE and PMC would be unable to

distribute its marketing magazine as, during that time, "online viewing" was still in its

infancy. Defendants also required the mail to distribute misleading advertisements to

various states, including New York. For these reasons, the use of mail to conduct

fraudulent activity was necessary and inevitable.

### Defendants Committed Multiple Acts of Wire Fraud in Violation of 18 U.S.C. § 1343 in Furtherance of the Enterprise

243.     Defendants voluntarily and intentionally devised and participated in a scheme

with the intent to defraud Plaintiff.

244.     Defendants agreed to each of the acts of wire fraud described herein.

Additionally, Defendants agreed to rely on interstate wires to disseminate funds to others

in the Enterprise. Defendants illegally acquired and utilized wire transfers to further their

collective goal of furthering their RICO Enterprise. Defendants knew that these purchases

were illegally made.

245.     Defendants agreed that Defendants should facilitate these fraudulent purchases

over interstate wires in furtherance of the fraud. Plaintiff has received payment for

employment and sex work, comingled, in New York and Florida from Defendants Combs and Thomas.

246.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants, either individually or in combination with themselves, used, or caused to be used, interstate wire communications to transmit or disseminate false, fraudulent, and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343.

247.    Defendants could not have furthered their fraudulent scheme without the ability to use telecommunications to share information with clients and retailers nationwide. Defendants needed to communicate with clients and retailers around the country, utilizing interstate telecommunications wires to conduct the fraudulent activity. Which was necessary and inevitable to use.

248.    Plaintiff has been damaged in her business or property because Defendants violated 18 U.S.C. § 1962(a), (c)-(d)), and, therefore, Plaintiff is entitled to recover the damages and other remedies enumerated therein.

249.    Defendants' acts or omissions were actuated by actual malice and a willful and wanton disregard for the consequences suffered by Plaintiff, were directed towards her because of her gender, and with knowledge of a high degree of probability of harm to Plaintiff and reckless indifference to the consequences of their acts or omissions.

250.    Compensatory damages alone will be insufficient to deter such conduct in the future. There needs to be a criminal referral to the United States Justice Department, as well as to the States Attorney General's Office.

**WHEREFORE,** Plaintiff requests that the Court issue an Order and grant Judgment to the Plaintiffs as follows:

- Grant Plaintiff statutory, common law, and punitive damages, and applicable pre- and post-judgment interest, in full recompense for damages;

- Enter judgment according to the declaratory relief sought;

- Grant Plaintiff such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

- Grant Plaintiff an Incentive or Service Award reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## SECOND CAUSE OF ACTION

### SEXUAL ASSAULT AND SEXUAL HARASSMENT
### (Against Defendant Combs)

251.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

252.     As described herein, Defendant Combs frightened and placed Plaintiff in apprehension of harm when he forced and coerced Plaintiff to engage in sex work for him during his "White Parties" from 2004-2009 at Defendant Combs' homes in Miami, FL and Hampton, New York.

253.     Defendant Combs used threats, coercion to force Plaintiff into engaging in sex work and sex acts with his partygoers at his "White Parties."

254.    Defendant Combs directed Plaintiff to engage in sex acts with Defendant Jacob against Plaintiff's will at Defendant Combs' "White Party" in Hampton, NY.

255.    Upon information and belief, Defendant Combs may have directed others to engage in sex acts with Plaintiff while Plaintiff was unconscious at his "White Party" in Miami, FL.

256.    As a result of Defendant Combs' conduct, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which she is entitled to an award of monetary damages and other relief.

257.    Defendant Combs' conduct described herein was willful, wanton, and malicious. At all relevant times, Defendant Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was sure to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff. Plaintiff believes Defendant Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was sure to cause injury and/or humiliation to Plaintiff due to Plaintiff's gender. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## THIRD CAUSE OF ACTION

### SEXUAL ASSAULT AND SEXUAL HARASSMENT
### (Against Defendant Jacob)

258.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

259. As described herein, Defendant Jacob, Combs and Thomas frightened and placed Plaintiff in apprehension of harm of physical and sexual assault while employed as entertainment at Defendant Combs' "White Parties."

260. Plaintiff was forced to engage in sex acts with Defendant Jacob against her will while the "White Party" was occurring.

261. As a result of Defendant Jacob's assault, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which she is entitled to an award of monetary damages and other relief.

262. The conduct of Defendant Jacob willful, wanton, and malicious. At all relevant times, Defendant Jacob acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## FOURTH CAUSE OF ACTION

### SEXUAL ASSAULT
### (Against Defendant Does)

263. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

264. As described herein, Defendant Does frightened and placed Plaintiff in apprehension of harm when they physically and sexually assaulted her at the "White Party" in Miami.

265.     Defendant Does forcibly touched and attempted to touch Plaintiff's intimate areas and/or touched Plaintiff with their own intimate body parts. Upon information and belief, Defendant Does touched Plaintiff's intimate areas while Plaintiff was unconscious from forced narcotics use by Defendant Combs. Defendant Combs and/or Thomas failed to intervene.

266.     As a result of Defendant Does conduct, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which she is entitled to an award of monetary damages and other relief.

267.     The conduct of Defendant Does described herein was willful, wanton, and malicious. At all relevant times, Defendant Does acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## FIFTH CAUSE OF ACTION

### THE NYC VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION ACT
(Against ALL Defendants)

268.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

269.     The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime

of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

270.    The herein described conduct of Defendant Combs, Thomas and Jacob, including forcing Plaintiff to engage in sex work, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in N.Y. C. Admin Code § 10-1103. ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

271.    Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

272.    Defendants' crimes of violence were motivated by Plaintiff's gender as defined in in the New York City Administrative Code § 8-903, as Defendant Jacob committed forcible sex acts upon Plaintiff that would constitute felonies under state law and as the conduct presents a serious risk of physical injury, whether or not those acts have resulted in criminal charges, prosecution, or conviction.

273.    The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act

itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94

(App. Div. 2019).

274.     The described conduct herein of Defendant Combs, Thomas and Jacob constitutes

sexual offenses as defined in Article 130 of the New York Penal Law.

275.     Plaintiff is a woman, who is older than 18, who alleges misdemeanor and/or

felony penal law violations, including but not limited to sexual misconduct (N.Y. Penal

L. § 130.20), criminal sexual act in the first degree (N.Y. Penal L. § 130.50), criminal

sexual act in the third degree ( N.Y. Penal L. § 130.40), forcible touching (N.Y. Penal L.

§ 130.52), sexual abuse in the first degree (N.Y. Penal L. § 130.65), and sexual abuse in

the second degree ((N.Y. Penal L. § 130.60).

276.     Defendant Combs coerced and forced Plaintiff to engage in sexual contact and/or

sexual intercourse with Defendant Jacob, despite her refusal and unwillingness to do so.

277.     Defendant Combs demanded Plaintiff drink laced alcohol while in her

employment capacity as entertainment at the "White Party." Thus, Defendant Combs

knew or should have known that Plaintiff was incapable of consenting to sexual contact

and/or sexual conduct.

278.     Defendants Combs' and Jacobs' actions presented a serious risk of physical injury

to Plaintiff's person, regardless of whether or not those acts resulted in criminal charges,

prosecution or conviction.

279.     Furthermore, Defendants BBE, SJC, CGE, VIBE and PMC enabled Defendant

Combs' commission of the crimes of violence motivated by gender, and thus, are liable

under the NYC Victims of Gender-Motivated Protection Act.

280.     Defendants Thomas, Jacob, BBE, SJC, CGE, VIBE and PMC enabled or
participated in the sexual trafficking of Plaintiff because Defendants failed to, among
other things, protect Plaintiff from a known danger; have sufficient policies and
procedures in place to prevent sexual assault; properly implement policies and procedures
to prevent sexual assault; take reasonable measures to ensure that policies to prevent
sexual assault were working; train their employees on identifying sexual assault and
inappropriate workplace behaviors; protect their employees from sexual assault; and
adhere to the applicable standard of care.

281.     Defendants BBE, SJC, CGE, VIBE and PMC enabled or participated in the sexual
trafficking of Plaintiff because Defendants failed to timely and properly educate, train,
supervise, and/or monitor their agents or employees regarding policies and procedures
that should be followed when sexual trafficking is suspected or observed.

282.     Prior to Defendant Combs forcing Plaintiff into sex work, Defendants BBE, SJC,
CGE, VIBE and PMC knew, or should have known, that Defendant Combs was not fit to
be in a position of authority. Defendants, by and through their agents, servants and/or
employees, became aware, or should have become aware of Defendant Combs'
propensity to commit sexual assault and of the risk to Plaintiff's safety. At the very least,
Defendants knew, or should have known, that they did not have sufficient information
about whether or not their leaders, managers, and people were safe to be in positions of
power.

283.     Defendants BBE, SJC, CGE, VIBE and PMC knew, or should have known, that
Combs posed a risk of sexual violence, assault, harassment and trafficking.

284.     Defendants BBE, SJC, CGE, VIBE and PMC failed to properly supervise Defendant Combs and protect Plaintiff from a known danger, and thereby enabled Combs' sexual trafficking of Plaintiff.

285.     Defendants BBE, SJC, CGE, VIBE and PMC negligently deemed that Defendant Combs was fit to be in a position of authority; and/or that any previous suitability problems Defendant Combs had were fixed and cured; and/or that Combs would not commit acts of sexual assault, battery, harassment or trafficking; and/or that Combs would not injure others.

286.     Moreover, Defendants BBE, SJC, and CGE enabled the sexual trafficking of Plaintiff by actively maintaining and employing Defendant Combs in a position of power and authority through which Combs had control over people, including Plaintiff.

287.     As a direct and proximate result of the aforementioned crime of violence and gender- motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants that:

- Declares Defendant Combs engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that Combs drugged and sex trafficked Plaintiff;

- Declares that Defendants BBE, SJC, CGE, Thomas, Jacob, VIBE, PMC, Does and Organizational Does engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that they enabled Defendant Combs' commission of the crimes of violence motivated by gender;

- Awards Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation, consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts in an amount to be proven;

- Awards Plaintiff damages against Defendants joint and severally;

- Awards Plaintiff punitive and exemplary damages according to proof;

- Awards Plaintiff attorneys' fees, costs, and expenses incurred in the pursuance of this action;

- Awards prejudgment and post-judgment interest; and

- Awards Plaintiff such other and further relief as the Court may deem equitable, just and

## **SIXTH CAUSE OF ACTION**

### **PREMISES LIABILITY FOR THE SEXUAL ASSAULT COMMITTED BY DEFENDANT JACOB**
### **(Against Defendant Combs)**

288.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

289.    Plaintiff was sex trafficked to Defendant Jacob at the "White Party" in 2007 in Hampton, NY. Defendant Combs was present, along with other high profiled individuals, while Plaintiff was being assaulted by Defendant Jacob during the party. Plaintiff was legally on the premises as an employee of Defendants Combs, BBE, SJC and CGE.

Defendant Jacob was legally on the premises owned by Defendant Combs as a guest and invitee of Defendant Combs. Mr. Combs owned the premises and had dominion and control over the premises where Plaintiff was harmed. Defendant Combs had dominion and control over the actions of Defendant Jacob and failed to step in and stop Defendant Jacob from sexually assaulting Plaintiff.

290.     As the property owner, Defendant Combs had a duty to protect Plaintiff from the harm she suffered at the hands of Defendant Jacob. Defendant Combs breached his duty when he failed to stop Defendant Jacob from sexually assaulting Plaintiff. In furtherance of this breach, Defendant Combs demanded and encouraging Defendant Jacob, and possibly others, to assault Plaintiff. Plaintiff has suffered immensely because of Defendant Combs' intentional breach of his duty.

291.     As a result of Defendant Combs' breach of his duty, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages, for which she is entitled to an award of monetary damages and other relief.

292.     Defendant Combs' conduct described above was willful, wanton, and malicious. At all relevant times, Defendant Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff. Plaintiff believes Defendant Combs intended his conduct against Plaintiff primarily because of her gender. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

**SEVENTH CAUSE OF ACTION**

## TRAFFICKING AND VICTIMS' PROTECTION ACT
### (Against ALL Defendants)

293.      Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

294.      Defendants knowingly and intentionally participated in, perpetrated, assisted, supported, and facilitated a sex-trafficking Enterprise that was in and affecting interstate commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(1).

295.      Among other things, Defendants Combs and Thomas knowingly and intentionally recruited, enticed, provided, obtained, advertised, and solicited by various means Plaintiff, knowing that Defendants Combs and Thomas would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Plaintiff to engage in commercial sex acts.

296.      Defendants BBE, SJC, CGE, VIBE, PMC and its employees had actual knowledge that they were perpetrating and facilitating Defendant Combs' sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain, and provide Plaintiff, as well as others, into commercial sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion.

297.      Despite such knowledge, Defendants intentionally paid for, facilitated, perpetrated, and participated in Defendant Combs' violations of 18 U.S.C. § 1591(a)(1), which Defendants were in reckless disregard of the fact that Defendant Combs would coerce, defraud, and force Plaintiff to engage in sex work via commercial sex acts.

298.    Defendants' actions were in and affecting interstate commerce, including its distributing of marketing material and publishing activities with VIBE magazine which were in and affecting interstate commerce.

299.    By taking the concrete steps alleged in this complaint, Defendants knowingly participated in sex trafficking and furthered Defendant Combs' sex-trafficking Enterprise. The concrete steps constituted taking part in the sex-trafficking Enterprise and were necessary for its success. The concrete steps constituted active engagement by all Defendants in Defendant Combs's sex-trafficking Enterprise. Defendants knew that their active engagement would lead to and cause coercive commercial sex trafficking.

300.    In perpetrating TVPA violations, upon information and belief, Defendants Combs and Thomas willfully failed to file required taxes with the federal government.

301.    Defendants' affirmative conduct was committed knowing, and in reckless disregard of the facts, that Defendant Combs would use cash and the financial support provided by Defendants BBE, SJC, CGE, VIBE, PMC as a means of defrauding, forcing, and coercing sex acts from Plaintiff, as well as others. Defendants' conduct was outrageous and intentional.

302.    Defendants' knowing and intentional conduct has caused Plaintiff serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

303.    This case does not involve mere fraud. Instead, Defendants' criminal conduct in perpetrating TVPA violations was outrageous and intentional because it was in deliberate furtherance of a widespread and dangerous criminal sex trafficking organization. Defendants conduct also evinced a high degree of moral turpitude and demonstrated such

wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants'

criminal conduct was directed specifically at Plaintiff, because of her gender, who was a

victim of Defendant Combs' sex-trafficking Enterprise.

304.     Defendants' outrageous and intentional conduct in this case is part of a pattern

and practice of profiting by undertaking illegal "high-risk, high reward" actions.

305.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1),

1595, Defendants are liable to Plaintiff for the damages she sustained, and reasonable

attorneys' fees.

## EIGHTH CAUSE OF ACTION

**AIDING, ABETTING, AND INDUCING A SEX-TRAFFICKING ENTERPRISE IN
VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 2,
1591(a)(1) & (2), 1595
(against Defendants Thomas, Jacob, BBE, SJC, CGE, VIBE, PMC, Does, Organizational
Does)**

306.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as

if set forth fully herein.

307.     Defendants BBE, SJC, CGE, VIBE and PMC entered into a general partnership

agreement with Defendant Combs. As general business partners, each individual member

is responsible for the actions of the partners of the partnership. Defendants BBE, SJC,

CGE, VIBE and PMC provide resources to Defendant Combs to throw the lavished

"White Parties." According to Plaintiff, the Combs Rico Enterprise was engaging in sex-

trafficking activities during almost every "White Party" specifically those attended by

Plaintiff from 2004-2009. As a result of their intentional or negligent failure of their duty

to supervise, Defendants BBE, SJC, CGE, VIBE and PMC aided, abetted, and induced

Sean Combs' sex-trafficking Enterprise that was in and affecting interstate commerce, in violation of 18 U.S.C. §§ 2, 1591(a)(1) & (a)(2).

308.    The crimes that Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does aided and abetted are (1) Defendant Combs' perpetrating of coercive sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), and (2) Defendant Combs' co-conspirators knowingly benefitting from coercive sex trafficking, in violation of 18 U.S.C. § 1591(a)(2). These crimes were in and affecting interstate commerce.

309.    Defendant Combs' co-conspirators benefitted financially and received things of value from their participation in the Combs' sex-trafficking Enterprise, including payments and other compensation, like actual sex acts co-conspirator Jacob received, from Defendant Combs. All co-conspirators who benefitted financially.

310.    Under 18 U.S.C. § 2, as a result of their general business partnership with Defendant Combs, and their failure to monitor Defendant Combs, Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does are punishable as a principal under 18 U.S.C. §§ 1591(a)(1) & (a)(2) and thereby committed and perpetrated violations of Chapter 77, Title 18, U.S. Code, when it aided, abetted, counseled, commanded, induced, and procured Defendant Combs' and his sex-trafficking Enterprise and sex trafficking of Plaintiff , as well as others.

311.    Under 18 U.S.C. § 2, as a result of their general business partnership with Defendant Combs, and their failure to monitor Defendant Combs, Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does committed and perpetrated crimes in violation of 18 U.S.C. §§ 1591(a)(1) & (a)(2) by aiding, abetting, inducing, and procuring Defendant Combs' and his sex-trafficking Enterprise and the sex trafficking of Plaintiff.

312.     Defendants directly committed and perpetrated violations of Chapter 77, Title 18, U.S. Code, including 18 U.S.C. §§ 1591(a)(1) & (a)(2), by aiding, abetting, and inducing the sex-trafficking Enterprise and the sex trafficking of Plaintiff. Defendants Combs, Thomas and Jacob directly violated Chapter 77 by committing and perpetrating these violations.

313.     Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does aided, abetted, and induced Defendant Combs' sex-trafficking Enterprise and sex trafficking of Plaintiff knowing that Defendant Combs would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Plaintiff to engage in commercial sex acts.

314.     By aiding, abetting, and inducing Defendant Combs' and his co-conspirators' sex-trafficking Enterprise and sex trafficking of Plaintiff, Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does benefited financially and received things of value for participating in Defendant Combs' sex-trafficking Enterprise.

315.     Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does and their employees had actual knowledge that they were aiding, abetting, and inducing Defendant Combs' and his co-conspirators' sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain, and provide Plaintiff, as well as others, into commercial sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion. Defendants knew, and should have known, that Defendant Combs had engaged in acts in violation of the TVPA.

316.     Despite such knowledge, and through their intentional or negligent failure to monitor Defendant Combs, Defendants BBE, SJC, CGE, VIBE , PMC, Does and

Organizational Does financed and aided, abetted, and induced Defendant Combs'

violations of 18 U.S.C. §§ 1591(a)(1) & (a)(2), which constituted perpetrating violations

of those laws under 18 U.S.C. § 2. Defendants BBE, SJC, CGE, Jacob, VIBE and PMC

knew or should have known if they had conducted a simple investigation, they would

have discovered that Defendant Combs was acting in reckless disregard and was

coercing, defrauding, and forcing Plaintiff to engage in commercial sex acts.

317.     Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does

affirmative conduct of blind resources to Defendant Combs aided, abetted, and induced

Defendant Combs to continue his sex-trafficking Enterprise. Their violations were

committed knowingly, and in reckless disregard of the facts, that Defendant Combs

would use the resources provided as a means of defrauding, forcing, and coercing sex

acts from Plaintiff. Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational

Does conduct was outrageous and intentional.

318.     Upon information and belief, Defendants BBE, SJC, CGE, VIBE , PMC, Does

and Organizational Does intentional conduct of aiding, abetting, and inducing Defendant

Combs's violations has caused Plaintiff serious harm including, without limitation,

physical, psychological, emotional, financial, and reputational harm.

319.     This case does not involve mere fraud. Instead, Defendants' criminal conduct in

aiding, abetting, and inducing Defendant Combs' violations of the TVPA was outrageous

and intentional, because it was in deliberate furtherance of a widespread and dangerous

criminal sex trafficking organization. Defendants BBE, SJC, CGE, VIBE , PMC, Does

and Organizational Does criminal conduct also evinced a high degree of moral turpitude

and demonstrated such wanton dishonesty as to imply a criminal indifference to civil

obligations. Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does

criminal conduct was directed specifically at Plaintiff who was the victim of Defendant

Combs' sexual abuse and sex-trafficking organization.

320.      Defendants BBE, SJC, CGE, VIBE , PMC, Does and Organizational Does

outrageous and intentional conduct in this case is part of a pattern and practice of

Defendants profiting by undertaking illegal "high-risk, high reward" general business

partnerships.

321.      By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1),

1595, Defendants are liable to Plaintiff for the damages she sustained and reasonable

attorneys' fees.

322.      By virtue of these intentional and outrageous violations of 18 U.S.C. §§

1591(a)(1), 1595, Defendants are liable to Plaintiff for punitive damages.


### NINTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant Combs)

323.      Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as

if set forth fully herein.

324.      Defendant Combs created an unreasonable risk of causing emotional distress to

Plaintiff, and Defendant Combs knew or should have known that such conduct was likely

to result in emotional distress that might and/or likely would cause illness or bodily harm.

325.      Plaintiff's emotional distress was foreseeable to Defendant Combs.

326.      As a direct and proximate result of the negligent conduct of Defendant Combs,

Plaintiff suffered and will continue to suffer severe emotional distress.

327.     Defendant Combs' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant Jacob)

328.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

329.     Defendant Jacob created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant Jacob knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

330.     Plaintiff's emotional distress was foreseeable to Defendant Jacob.

331.     As a direct and proximate result of the negligent conduct of Defendant Jacob, Plaintiff suffered and will continue to suffer severe emotional distress.

332.     Defendant Jacob's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## ELEVENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant Thomas)

333.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

334.     Defendant Thomas created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant Thomas knew or should have known that such conduct was

likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

335.    Plaintiff's emotional distress was foreseeable to Defendant Thomas

336.    As a direct and proximate result of the negligent conduct of Defendant Thomas, Plaintiff suffered and will continue to suffer severe emotional distress.

337.    Defendant Thomas's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWELTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant BBE)

338.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

339.    Defendant BBE created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant BBE knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

340.    Plaintiff's emotional distress was foreseeable to Defendant BBE.

341.    As a direct and proximate result of the negligent conduct of Defendant BBE, Plaintiff suffered and will continue to suffer severe emotional distress.

342.    Defendant BBE's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## THIRTEENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant SJC)

343.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

344.     Defendant SJC created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant SJC knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

345.     Plaintiff's emotional distress was foreseeable to Defendant SJC.

346.     As a direct and proximate result of the negligent conduct of Defendant SJC, Plaintiff suffered and will continue to suffer severe emotional distress.

347.     Defendant SJC's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## FOURTEENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant CGE)

348.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

349.     Defendant CGE created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant CGE knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

350.     Plaintiff's emotional distress was foreseeable to Defendant CGE.

351.     As a direct and proximate result of the negligent conduct of Defendant CGE, Plaintiff suffered and will continue to suffer severe emotional distress.

352.     Defendant CGE's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## FIFTEENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant VIBE)

353.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

354.    Defendant VIBE created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant VIBE knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

355.    Plaintiff's emotional distress was foreseeable to Defendant VIBE.

356.    As a direct and proximate result of the negligent conduct of Defendant VIBE, Plaintiff suffered and will continue to suffer severe emotional distress.

357.    Defendant VIBE's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## SIXTEENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant PMC)

358.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

359.    Defendant PMC created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant PMC knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

360.    Plaintiff's emotional distress was foreseeable to Defendant PMC.

361.    As a direct and proximate result of the negligent conduct of Defendant PMC, Plaintiff suffered and will continue to suffer severe emotional distress.

362.     Defendant PMC's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## SEVENTEENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant Does)

363.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

364.     Defendant Does created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant Does knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

365.     Plaintiff's emotional distress was foreseeable to Defendant Does.

366.     As a direct and proximate result of the negligent conduct of Defendant Does, Plaintiff suffered and will continue to suffer severe emotional distress.

367.     Defendant Does' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## EIGHTEENTH CAUSE OF ACTION

### NIED – SEX TRAFFICKING
### (against Defendant Organizational Does)

368.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

369.     Defendant Organizational Does created an unreasonable risk of causing emotional distress to Plaintiff, and Defendant Organizational Does knew or should have known that

such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

370.     Plaintiff's emotional distress was foreseeable to Defendant Organizational Does.

371.     As a direct and proximate result of the negligent conduct of Defendant Organizational Does, Plaintiff suffered and will continue to suffer severe emotional distress.

372.     Defendant Organizational Does' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## NINETENTH CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant Combs)

373.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

374.     Defendant Combs engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting him to sexual assault and misconduct.

375.     The sexual assault, trafficking and misconduct by Defendant Combs were extreme and outrageous conduct that shocks the conscience.

376.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

377.     As a direct and proximate result of Defendant Combs's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

378.     Defendant Combs' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTIETH CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant Jacob)

379.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

380.     Defendant Jacob engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault and misconduct.

381.     The sexual assault, trafficking and misconduct by Defendant Jacob were extreme and outrageous conduct that shocks the conscience.

382.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

383.     As a direct and proximate result of Defendant Jacob's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

384.     Defendant Jacob's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-FIRST CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant Thomas)

385.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

386.     Defendant Thomas engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault and misconduct.

387.     The sexual assault, trafficking and misconduct by Defendant Thomas were extreme and outrageous conduct that shocks the conscience.

388.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

389.     As a direct and proximate result of Defendant Thomas' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

390.     Defendant Thomas' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-SECOND CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant BBE)

391.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

392.     Defendant BBE engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault and misconduct.

393.     The sexual assault, trafficking and misconduct by Defendant BBE were extreme and outrageous conduct that shocks the conscience.

394.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

395.     As a direct and proximate result of Defendant BBE'S extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

396.     Defendant BBE's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-THIRD CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant SJC)

397.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

398.     Defendant SJC engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia*, subjecting her to sexual assault and misconduct.

399.     The sexual assault, trafficking and misconduct by Defendant SJC were extreme and outrageous conduct that shocks the conscience.

400.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

401.     As a direct and proximate result of Defendant SJC's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

402.     Defendant SJC's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-FOURTH CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant CGE)

403. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

404. Defendant CGE engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault and misconduct.

405. The sexual assault, trafficking and misconduct by Defendant CGE were extreme and outrageous conduct that shocks the conscience.

406. These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

407. As a direct and proximate result of Defendant CGE's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

408. Defendant CGE's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-FIFTH CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant VIBE)

409. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

410. Defendant VIBE engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault and misconduct.

411. The sexual assault, trafficking and misconduct by Defendant VIBE were extreme and outrageous conduct that shocks the conscience.

412.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

413.     As a direct and proximate result of Defendant VIBE's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

414.     Defendant VIBE's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-SIXTH CAUSE OF ACTION

## IIED – SEX TRAFFICKING
### (Defendant PMC)

415.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

416.     Defendant PMC engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia*, subjecting her to sexual assault and misconduct.

417.     The sexual assault, trafficking and misconduct by Defendant PMC were extreme and outrageous conduct that shocks the conscience.

418.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

419.     As a direct and proximate result of Defendant PMC's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

420.     Defendant PMC's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-SEVENTH CAUSE OF ACTION

## IIED – SEX TRAFFICKING
### (Defendant Does)

421.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

422.     Defendant Does engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault and misconduct.

423.      The sexual assault, trafficking and misconduct by Defendant Does were extreme and outrageous conduct that shocks the conscience.

424.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

425.     As a direct and proximate result of Defendant Does' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

426.     Defendant Does' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-EIGHTH CAUSE OF ACTION

### IIED – SEX TRAFFICKING
### (Defendant Organizational Does)

427.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

428.     Defendant Organizational Does engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting him to sexual assault and misconduct.

429.     The sexual assault, trafficking and misconduct by Defendant Organizational Does were extreme and outrageous conduct that shocks the conscience.

430.     These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

431.     As a direct and proximate result of Defendant Organizational Does' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

432.     Defendant Organizational Does' conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## TWENTY-NINTH CAUSE OF ACTION

## KNOWING BENEFICIARY IN A SEX-TRAFFICKING ENTERPRISE IN VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 1591(A)(2), 1595 (Against ALL Defendants)

433.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

434.     Upon information and belief, Defendants knowingly and intentionally benefitted financially and by receiving things of value, from participating in, assisting, supporting, and facilitating an illegal coercive sex-trafficking Enterprise that was in and affecting interstate commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(2). Defendants took several concrete steps to aid and participate in Defendant Combs' sex-trafficking Enterprise. Among the concrete steps that Defendants took to aid Defendant Combs was providing unfettered access to resources in his control which made the sex-trafficking Enterprise possible. Enabling Defendant Combs with significant, unmonitored, resources caused Defendants to receive the benefits detailed throughout this

complaint. Defendants' willingness to provide significant, unmonitored, resources to Defendant Combs was the quid pro quo for it receiving the benefits detailed herein.

435.　　Upon information and belief, the resources provided were necessary for Defendant Combs to coerce Plaintiff to engage in commercial sex acts. The resources directly formed part of the commercial nature of the sex acts. The resources were also a necessary and required part of Defendant Combs' recruitment of Plaintiff. By providing unchecked resources, Defendants knew, or should have known, that the money would be used to fund the sex-trafficking Enterprise. Through their general business partnership with Defendant Combs, Defendants actively participated in the recruitment of sex-trafficking victims to the Enterprise.

436.　　 Upon information and belief, the unchecked resources that Defendants provided went far beyond providing routine partnership or compensation to a general business partner. It was far from routine for Defendants to provide substantial marketing and resources throughout the years to Defendant Combs on his business ventures including the "White Parties" and who did not have an apparent legitimate need for such extravagant marketing and resources. The sheer number of pages in which Defendant Combs appears in one issue of Defendants VIBE and PMC publication went far beyond normal for the music industry. Defendants knew, or should have known, through reasonable inquiry that they were feeding Defendant Combs' sexual deviancy.

437.　　Upon information and belief, Defendants provided extravagant marketing and resources to Defendant Combs, which, under the circumstances of this case, was entirely inconsistent with the ordinary duties of a partner, or general business partnership member.

438.     Upon information and belief, the reason that Defendants ignored numerous "red flags" about Defendant Combs was to receive financial benefits from the sex-trafficking Enterprise. Defendants knew that they would gain far-from-routine benefits by ignoring the "red flags" associated with Defendant Combs and by participating in his sex-trafficking Enterprise.

439.     Upon information and belief, among the concrete steps that Defendants took to aid and participate in the Combs' sex-trafficking Enterprise were legitimizing Defendant Combs' "White Parties" as legitimate, high-profile networking events through intentionally false and misleading stories in its magazine. By cloaking the true nature of the "White Parties," Defendants were able to continue the Enterprise and receive benefits from its participation in the sex-trafficking Enterprise. Through their general business partnership agreement with Defendant Combs, Defendants adopted, by association ,the intentional acts of their general business partner, Defendant Combs, affirmative conduct causing Defendants to receive those benefits.

440.     Upon information and belief, by taking the concrete steps outlined above (along with the others alleged in this complaint), Defendants knowingly participated in sex-trafficking and furthered the Combs' sex-trafficking Enterprise. The concrete steps above constituted taking part in the sex-trafficking Enterprise and were necessary for its success. The concrete steps above constituted active engagement by Defendants in Combs' sex- trafficking Enterprise.

441.     Upon information and belief, Defendants knowingly and intentionally benefited financially from, and received value for, its participation in the sex-trafficking Enterprise named herein with knowledge, or reckless disregard of the fact, that Defendant Combs

96

would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Plaintiff to engage in commercial sex acts.

442. Upon information and belief, Defendants knew of Defendant Combs deviant and violent behavior, through years of lawsuits, hush money settlements, and negative publicity surrounding Defendant Combs as early as 2021 and most notably by Ms. Cassie Ventura in 2023. Almost all of the suits, since Ms. Ventura's suit, allege Defendant Combs was engaging in sex-trafficking, among other things.

443. Upon information and belief, Defendants' actions extend well beyond a situation of failing to train themselves and their staff about recognizing the warning signs of sex-trafficking. Defendants did recognize the signs of Combs' sex-trafficking which is why they prominently featured it in Defendants VIBE and PMC's November 2006 magazine publication of VIBE. Upon information and belief, indeed, Defendants' employees, knew about Combs sex-trafficking Enterprise but decided to continue facilitating the Combs' sex-trafficking Enterprise rather than ending its participation in the Enterprise.

444. Upon information and belief, Defendants VIBE and PMC were also in the business of promoting money for sex as seen in the classified section of Defendants VIBE and PMC's November 2006 magazine.



445.    Upon information and belief, due to the facts that came to their attention through

complaint filed by Cassie Ventura, and others, accusing Defendant Combs of sex-

trafficking, Defendants knew to a certainty that Combs was engaged in sex-trafficking.

446.    Upon information and belief, Defendants knew the names of many of Combs'

sex-trafficking victims, including Plaintiff.

447.    Upon information and belief, Defendants helped to conceal the names of Combs'

victims from the public and from law enforcement and prosecuting agencies by helping

to conceal the existence of the sex-trafficking Enterprise, including failing to get a release

of Plaintiff before publishing her picture in Defendants VIBE and PMC's November

2006 magazine. Among the ways in which Defendants helped to conceal the Enterprise's

existence was by failing to properly monitor or audit Defendant Combs to ensure that the resources provided were being used in a legal manner as well as ensuring that the proper accounting and tax reporting was made to the federal government.

448.     Defendants had constructive knowledge of Combs' sex-trafficking Enterprise because of specific acts by Defendant Combs that put it on notice of a particular and ongoing sex-trafficking Enterprise. Among the specific acts were Combs' "White Party" events that representatives of Defendants, specifically Thomas, Jacob, VIBE and PMC, periodically attended; Defendant Combs had narcotics and sex workers present in circumstances that should have prompted Defendants and its employees to raise questions about Combs's sex-trafficking, and/or if he was using the resources provided to him by Defendants to continue such Enterprise.

449.      Upon information and belief, among the financial benefits that the Defendants received for participating in and facilitating Combs' sex-trafficking Enterprise were the affiliation and access to Defendant Combs' popularity and network of celebrities. Defendant Combs was a popular and highly influential figure in the entertainment and music industries to whom everyone wanted to connect. Defendant Combs was known for the "White Parties" turning it to a cultural phenomenon. Affiliation with and/or general business partnerships with Defendant Combs and his "White Parties" garnered legitimacy, immense success, and access to top and emerging artists, celebrities, famous athletes, political figures, musicians, and international dignitaries like former President Donald Trump. Defendants knew first-hand the power, influence, and effect attaching themselves to Defendant Combs would have on their bottom-line as evidenced by their repeated general business partnership with Defendant Combs ranging from 1993 to

recently. Defendants profited from their affiliation with Defendant Combs and their general business partnership may have supported his sex-trafficking Enterprise. Defendant Combs and Combs-controlled entities used the marketing and resources they received from their general business partners to facilitate their sex-trafficking Enterprise. Defendant Combs benefited from his general business partners' apparent willful blindness through their willingness to provide substantial resources in suspicious circumstances including their failure to ensure that their general business partners properly reported to the U.S. Federal Government.

450.    Upon information and belief, among the financial benefits that Defendants received for participating in Combs' sex-trafficking Enterprise was the referral of business opportunities from Defendant Combs and his co-conspirators and access to other celebrities, up-and-coming artists, entertainers, producers, songwriters, and creatives. Defendants profited from these business opportunities. Defendants VIBE and PMC received further financial benefits via an increase in revenue and sales from publications featuring Defendant Combs. Defendant Combs supplies numerous benefits to Defendants in exchange for assisting in his sex-trafficking Enterprise. These referrals and benefits were a quid pro quo for Defendants participation.

451.    Defendants, especially VIBE and PMC, knew, or should have known, that if they stopped assisting, supporting, and facilitating Combs' sex-trafficking Enterprise, they would no longer receive those benefits.

452.    Upon information and belief, Defendants knew and was in reckless disregard of the fact that it was Defendant Combs' pattern and practice to use the channels and instrumentalities of interstate commerce (vehicles, yachts and commercial airplanes) to

entice, recruit, solicit, harbor, provide, obtain, and transport individuals, like the Plaintiff, for purposes of causing commercial sex acts, in violation of 18 U.S.C. § 1591(a)(1).

453.     Upon information and belief, Defendants and their employees had actual knowledge that they were facilitating Defendant Combs' sexual abuse and trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain and propel Plaintiff into commercial sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion, and a combination of all these means.

454.     Upon information and belief, despite such knowledge, Defendants intentionally facilitated, and participated in Combs' violations of 18 U.S.C. § 1591(a)(1), which Defendants knew, and were in reckless disregard of the fact that Defendant Combs would coerce, defraud, and force Plaintiff to engage in commercial sex acts.

455.     Upon information and belief, Defendants, through its employees and agents, actively participated in the sex trafficking conspiracy and led Plaintiff to engage in sex work under the belief that she would be rewarded if she cooperated and acquiesced to Defendant Combs' coercive demands.

456.     Initially, Plaintiff was rewarded by Defendant Combs' coercive demands as Defendant kept his word and hired Plaintiff's then then-boyfriend, Mr. Gallo, as a model in a nationwide Sean John clothing campaign.

457.     Upon information and belief, Defendants' affirmative conduct was committed knowingly, and in reckless disregard of the facts, that Defendant Combs would use the resources provided by Defendants as a means of defrauding, forcing, and coercing sex acts from Plaintiff. Defendants' conduct was outrageous and intentional.

458.     Upon information and belief, in addition to actual knowledge that they were participating in and facilitating the Combs' sex-trafficking Enterprise, Defendants also should have known that they were participating in and facilitating an Enterprise that had engaged in coercive sex-trafficking, as covered by 18 U.S.C. § 1595(a).

459.     Upon information and belief, in exchange for facilitating and covering up Combs' commercial sex-trafficking, Defendants received international recognition, notoriety, acclaim and praise in their magazines with Defendant Combs, which was a result of securing the partnership with Defendant Combs.

460.     Facilitating and covering up Combs' sexual trafficking and misconduct was a means of obtaining economic success and promotion within the Defendants' hierarchy.

461.     Upon information and belief, Defendants' knowing and intentional conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

462.     Upon information and belief, Defendants' knowing and intentional conduct has caused Plaintiff harm that is sufficiently serious.

463.     This case does not involve mere fraud. Instead, Defendants' criminal conduct in violating the TVPA was outrageous and intentional because it was in deliberate furtherance of a widespread and dangerous criminal sex-trafficking Enterprise. Defendants' willful blindness to Defendant Combs' criminal conduct also evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants' criminal conduct was directed specifically at Plaintiff, who was the victim of Defendant Combs' sexual abuse and sex-trafficking Enterprise directed at Plaintiff, largely due to her gender.

464.     Upon information and belief, Defendants' outrageous and intentional conduct, in

this case, is part of a pattern and practice of Defendants by undertaking illegal "high-risk,

high reward" general business partnerships.

465.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2),

1595, Defendants are liable to Plaintiff for the damages she sustained and reasonable

attorneys' fees.

## THIRTIETH CAUSE OF ACTION

**OBSTRUCTION OF THE ENFORCEMENT OF THE TRAFFICKING VICTIM
PROTECTION ACT, 18 U.S.C. § 1591(d)
(against ALL Defendants)**

466.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as

if set forth fully herein.

467.      Defendants, and its officers and employees, knowingly and intentionally

obstructed, attempted to obstruct, interfered with, and prevented the enforcement of 18

U.S.C. §§ 1591(a)(1) & (a)(2), all in violation of 18 U.S.C. § 1591(d). This activity is

hereinafter referred to collectively simply as "obstruction."

468.     Upon information and belief, Defendants' obstruction of the enforcement of 18

U.S.C. §§ 1591(a)(1) and (a)(2) was forbidden by 18 U.S.C. § 1591(d), and Defendants

thereby violated Chapter 77, Title 18. Defendants' obstruction described herein directly,

proximately, and foreseeably harmed Plaintiff by directly resulting in her coercively

being caused to engage in commercial sex acts and in other ways.

469.     Upon information and belief, Defendant Combs has a well-documented history of

criminal investigations. Defendants were on notice of Defendant Combs' proclivity to

criminal activity. They knew or should have known that Defendant Combs sex-

trafficking Enterprise would or could result in a criminal investigation by State and

Federal prosecutors for violating (among other laws) the TVPA. Defendants should have

taken a que from the Federal Prosecutors arrest and prosecution of Jeffrey Epstein on or

about July 8, 2019. The U.S. Attorney's Office for the Southern District of New York

indicted Epstein (and unnamed "associates") for violating the TVPA. Later, on about

June 29, 2020, the same Office indicted Epstein's co-conspirator, Ghislaine Maxwell, for

conspiracy to entice victims to travel to be abused by Epstein. Defendant Combs, Jacob,

Thomas and Does all engaged in the same activities as Mr. Epstein and Ms. Maxwell. In

fact, Defendant Combs, Jacob, Thomas and Does may have done worse.

470.      Upon information and belief, by providing marketing and resources for Defendant

Combs' sex trafficking Enterprise, and concealing their actions thereafter, Defendants

obstructed, interfered with, and prevented the state and federal government enforcement

of the TVPA against Defendant Combs, Jacob, Thomas and Does. Any filing of charges

was delayed by Defendants' actions; and because of that delay, Plaintiff, and many others

subsequently, thereafter, was coercively caused to engage in commercial sex acts.

471.      One example of how Defendants obstructed, attempted to obstruct, interfered

with, and prevented state and federal government's enforcement of the TVPA,

Defendants Combs and Thomas paid Plaintiff in cash so that the coercive commercial sex

acts would escape the detection of state and federal law enforcement and prosecuting

agencies. Defendants provided resources to further Defendant Combs' sex-trafficking

Enterprise and with the purpose of helping Defendants evade criminal liability for

violating the TVPA.

472.      By providing unchecked resources to Defendant Combs, Defendants intended and knew that Defendant Combs' coercive commercial sex acts would escape the detection of law enforcement and prosecuting agencies for some period of time. Defendants provided resources to further the Combs sex-trafficking Enterprise and with the purpose of helping Defendant Combs evade criminal liability for violating the TVPA.

473.      Upon information and belief, Defendants' obstruction, attempted obstruction, interference with, and prevention of the enforcement of the TVPA were all done intentionally and knowingly. For example, Defendants knew that Defendant Combs was high risk— specifically, high risk to violate the TVPA through continuing criminal sex-trafficking activities. As evidenced by Ms. Ventura's civil complaint, she informed members of Defendant Combs' parent label about the abuses he was visiting upon her.

474.      Upon information and belief, Defendants were aware Defendant Combs had a laundry list of criminal charges, and barely escaped serving prison time. Defendants were aware that there were public allegations that Defendant Combs' illegal conduct was facilitated by several named co-conspirators. They were made aware of this through complaints made by Ms. Ventura, and other lawsuits including R&B singers Tremaine Neverson, a/k/a Trey Songz, and Chris Brown. Defendants intentional conduct obstructed, attempted to obstruct, in many ways interfered with, and prevented the enforcement of the TVPA by investigators and prosecuting agencies.

475.      Upon information and belief, Defendants' relationship with Defendant Combs by providing his sex-trafficking Enterprise with unchecked resources went far beyond a normal (and lawful) partnership relationship. Defendants knew, and intended, that their relationship with Defendant Combs would go far beyond a normal entertainment industry

relationship. Defendants knew that its decision to go beyond a normal industry

relationship with Defendant Combs obstructed the ability of law enforcement and

prosecuting agencies to enforce the TVPA.

476.     Upon information and belief, Defendants' obstruction of the government's TVPA

and other law enforcement efforts was intentional and willful and, therefore, Defendants

intentionally and willfully caused Defendant Combs' commission of the forcible

commercial sex acts with Plaintiff through its obstruction supporting the concealment of

Defendant Combs' sex-trafficking Enterprise. Defendants knew that Defendant Combs

and his other co-conspirators would use means of force, threats of force fraud, coercion,

and a combination of such means to cause Plaintiff to engage in commercial sex acts.

477.     Upon information and belief, Defendants knew, acted in reckless disregard of the

fact, and should have known, that their obstruction in violation of 18 U.S.C. § 1591(d)

would directly and proximately lead to unlawful coercive commercial sex acts by

Plaintiff with men, like Defendant Jacob.

478.     Upon information and belief, Defendants' obstruction has caused Plaintiff serious

harm, including, without limitation, physical, psychological, financial, and reputational

harm. That harm was directly and proximately caused by the obstruction and the harm

resulting from obstruction was foreseeable.

479.     Defendants' obstruction has caused Plaintiff harm that is sufficiently serious.

480.     Upon information and belief, this case does not involve mere fraud. Instead,

Defendants' criminal conduct in obstructing enforcement of the TVPA was outrageous

and intentional because it was in deliberate furtherance of a widespread and dangerous

criminal sex-trafficking organization. Defendants' obstruction also evinced a high degree

of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal

indifference to civil obligations. Defendants' obstruction was directed specifically at

Plaintiff who was the victim of Defendant Combs' sex-trafficking Enterprise.

481.    By virtue of these violations of 18 U.S.C. § 1591(d), Defendants are liable to

Plaintiff for the damages she sustained and reasonable attorneys' fees by operation of 18

U.S.C. § 1595. Defendants perpetrated an obstruction of the TVPA, and therefore

perpetrated a violation of Chapter 77, Title 18.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against

Defendants, containing the following relief:

- Declaratory judgment that the actions, conduct, and practices of Defendants
  complained of herein violate Federal laws and laws of the States of New York and
  Florida;
- Award Plaintiff damages against Defendants, in an amount to be determined at trial,
  plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic
  damages, including, but not limited to, loss of past and future income, wages,
  compensation, seniority, and other benefits of employment;
- Award Plaintiff damages against Defendants in an amount to be determined at trial,
  plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or
  compensatory damages, including, but not limited to, compensation for her mental
  anguish, humiliation, embarrassment, stress and anxiety, emotional pain and
  suffering, and emotional distress;
- Award Plaintiff punitive damages, in an amount to be determined at trial;

- Award prejudgment interest on all amounts due;

- Award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

- Any such other and further relief as the Court may deem just and proper.

### THIRTY-FIRST CAUSE OF ACTION

**Violation of New York Civil Rights Law §§ 50 and 51
(against Defendants VIBE and PMC)**

482. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

483. Upon information and belief, Plaintiff alleges that Defendants VIBE and PMC knowingly used Plaintiff's picture, image, and likeness for the purposes of advertising and marketing their illegal sex-trafficking Enterprise disguised as a lavish and exclusive Summer party and otherwise obtaining commercial gain including, without limitation through the infringing uses, in violation of New York Civil Rights Law §§ 50 and 51, as depicted herein when Defendants VIBE and PMC published Plaintiff's picture, image, and likeness, without permission or consent of Plaintiff, in its November 2006 magazine.

484. Defendants VIBE and PMC unlawful uses of Plaintiff's picture, image, and likeness resulted in injuries to Plaintiff.

485. Plaintiff's claim is timely as she discovered Defendants VIBE and PMC infringing use in or about April 2024.

486. This statute further applies as the violation against Plaintiff occurred within New York State.

487.    There is no room for doubt that the identity of the person pictured in Defendants

VIBE and PMC's November 2006 magazine is Plaintiff and Plaintiff is easily identifiable

in the picture.

488.    The statute does not require Plaintiff to be a celebrity in order to have a

commercially valuable identity.

489.    Plaintiff's picture was used for purposes of false advertisement and trade.

490.    Defendants VIBE and PMC may argue the incidental use exception that

Defendant Combs' "White Parties" were a newsworthy matter or a matter of public

interest, which would be an incredulous untruth, as Defendant Combs' "White Parties"

were a ruse to disguise a corrupt sex-trafficking Enterprise.

491.    Defendants VIBE and PMC attempting to argue the incidental use exception also

fails because the use of Plaintiff's likeness is a disguised advertisement to promote

Defendants VIBE and PMC co-conspirator, Defendant Combs', "White Parties" and

various entertainment businesses.

492.    Defendants VIBE and PMC attempting to argue the incidental use exception

would further fail because Defendants VIBE and PMC did not give a factual account of

the Plaintiff's presence at the "White Parties." Defendants VIBE and PMC print

magazine falsely states Plaintiff was a "guest [striking] a revealing pose" despite Plaintiff

not being a guest of the party. Plaintiff was an employee who was required to act

revealing, seductive and sexually at the direction of Defendant Combs in an effort to

further benefit Defendant Combs' and his co-conspirators sex-trafficking Enterprise.

493.     The above referenced violations of New York Civil Rights Law §§ 50 and 51 and

injuries to Plaintiff subject Defendants VIBE and PMC to statutory damages and

penalties, including punitive damages, in amounts to be determined at trial.

494.     Upon information and belief, Plaintiff alleges that Defendants VIBE and PMC's

conduct as alleged herein was willful, reckless, and/or with knowledge that such uses of

Plaintiff's picture, image, and likeness were forbidden or unlawful. Consequently,

Plaintiff is entitled to exemplary damages.

## THIRTY-SECOND CAUSE OF ACTION

### Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
### (against Defendants VIBE and PMC)

495.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as

if set forth fully herein.

496.     Defendants VIBE and PMC commercially exploited and publicized Plaintiff's

image, likeness, and identity as part of the infringing uses and in doing so created a false

sponsorship and affiliation between Plaintiff and all Defendants. Through the infringing

uses, Defendants VIBE and PMC have falsely implied that Plaintiff endorses Defendants'

goods and services like continuing the farce that Defendant Combs' "White Parties" were

lavish, high-profile networking events and/or Plaintiff was a willing participant in

Defendant Combs' sex-trafficking Enterprise.

497.     The unauthorized use of the Plaintiff's image, likeness and identity in Defendants

VIBE and PMC November 2006 issue, is likely to confuse, deceive, or mislead

consumers into falsely believing that Plaintiff approves, sponsors, or endorses

Defendants' goods or services of the business at issue, like continuing the farce that

Defendant Combs' "White Parties" were lavish, high-profile networking events or as a willing participant in Defendant Combs sex-trafficking Enterprise.

498.      Defendants VIBE and PMC's conduct as set forth above is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with all Defendants, and as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff.

499.      Plaintiff's claim is timely as the Lanham Act does not contain a statute of limitations for claims under the Act, nor can the district court borrow from an analogous state statute.[18]

500.      As a result of the above conduct, Plaintiff has incurred special and general damages and seeks the same along with any statutory damages as allowed by law.

501.      As a result of the above conduct, Plaintiff has been irreparably harmed and is entitled to and seeks the remedy of injunctive relief in the form of an order prohibiting Defendants VIBE and PMC from exploiting her identity, image, or likeness without her prior express written consent.

502.      Defendants VIBE and PMC's conduct as alleged herein was willful, wanton, and malicious, and exposes them to additional and elevated damages in an amount to be proven at trial.

### THIRTY-THIRD CAUSE OF ACTION

### Violation of Common Law Unfair Competition
### (against Defendants VIBE and PMC)

---

[18] *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284 (2021)

503.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

504.    Defendants VIBE and PMC commercially exploited and publicized Plaintiff's image, likeness, and identity as part of the infringing uses and in doing so created a false sponsorship and affiliation between Plaintiff and Defendants. Through the infringing uses, Defendant has falsely implied that Plaintiff endorses Defendants' goods and services, like continuing the farce that Defendant Combs' "White Parties" were lavish, high-profile networking events and/ or as a willing participant in Defendant Combs' sex-trafficking Enterprise.

505.    The unauthorized use of the Plaintiff's image, likeness, and identity in Defendants VIBE and PMC November 2006 issue, is likely to confuse, deceive, or mislead consumers into falsely believing that Plaintiff approves, sponsors, or endorses Defendants' goods or services of the business at issue, like continuing the farce that Defendant Combs' "White Parties" were lavish, high-profile networking events or as a willing participant in Defendant Combs' sex-trafficking Enterprise.

506.    Defendants VIBE and PMC's conduct as set forth above is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendants, and as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff.

507.    As a result of the above conduct, Plaintiff has incurred special and general damages and seeks the same along with any statutory damages as allowed by law.

508.    As a result of the above conduct, Plaintiff has been irreparably harmed and is entitled to and seeks the remedy of injunctive relief in the form of an order prohibiting

Defendants VIBE and PMC from exploiting her identity, image, or likeness without her prior express written consent.

509.       Defendants VIBE and PMC acted in bad faith when they misappropriated and exploited Plaintiff's identity, image, or likeness to promote, market, and advertise Defendant Combs' businesses, (BBE, SJC, CGE) and corrupt sex-trafficking Enterprises via the "White Parties" and is likely to cause confusion or deceive purchasers as to the intent of Defendant Combs' and goods and services provided by his conglomerate of businesses.

510.       Defendants VIBE and PMC acted in bad faith because they were co-conspirators with Defendant Combs in an organized corrupt sex-trafficking Enterprise.

511.        Defendants VIBE and PMC's conduct as alleged herein exposes them to additional and elevated damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for judgment as follows:

- Compel Defendants VIBE and PMC, as well as their employees, agents, or anyone acting in concert with them, be enjoined from displaying, publishing, reproducing, or otherwise exploiting any materials using Plaintiff's picture, image, or likeness or that otherwise violates Plaintiff's rights to privacy;

- Compel Defendants VIBE and PMC, and their respective employees and agents, be enjoined from using or displaying Plaintiff's picture, image, or likeness in any manner;

- Award all profits of Defendants VIBE and PMC sales of the November 2006 issue of VIBE magazine, plus all losses of Plaintiff, plus punitive damages if found applicable, and all costs and attorneys' fees, the exact sums to be proven at trial, per N.Y. Civ. Rights Law § 50 and/or 51 and/or the Lanham Act;

- Award Plaintiff exemplary damages under N.Y. Civ. Rights Law § 50 and/or 51 and/or the Lanham Act;

- Award Plaintiff her costs and fees;

- Award Plaintiff pre-judgment interest as allowed by law; and

- Award Plaintiff further legal and equitable relief as deemed proper.

## FINAL PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for all of the relief enumerated and sought within this complaint.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein, so triable, pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully Submitted,

Dated: July 3, 2024

By:/s/ Ariel E. Mitchell-Kidd, Esq.
Ariel E. Mitchell-Kidd, Esq.
**The Law Office of Ariel E. Mitchell, P.A.**
500 NW 2nd Ave. #12864
Miami, FL 33103
305-903-5835
ariel@arielesq.com
*Attorney for Plaintiff*
(pro hac vice motion pending)

By:/s/ Steven A. Metcalf, II, Esq.
Steven A. Metcalf, II, Esq.
**METCALF & METCALF**
99 Park Ave., Suite 110
New York, NY 10004
646-253-0514
*Attorney for Plaintiff*
(Co-counsel/local counsel)